Ronald L. LERCH and Dalene Lerch, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.

No. 88–1655.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1988.

Decided June 21, 1989.

As Amended June 28, 1989.

Merwin D. Grant, Beus, Gilbert, Wake & Morrill, Phoenix, Ariz., for petitioners-appellants.

Gary R. Allen, Chief, App. Sec., Tax Div., Dept. of Justice, Washington, D.C., William S. Rose, Jr., Asst. Atty. Gen., David I. Pincus, Tax Div., Dept. of Justice, POB 502, Washington, D.C., Stuart E. Horwich, Arlington, Va., for respondent-appellee.

Before BAUER, Chief Judge, WOOD, Jr. and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Taxpayers Ronald and Dalene Lerch appeal a decision of the United States Tax Court upholding deficiency determinations made by the Commissioner of Internal Revenue Service ("Commissioner") against the Lerches for the tax years 1977 through 1981. Although many issues were litigated before the Tax Court, in this appeal the taxpayers question only three of the Tax Court's rulings: (1) Did the Tax Court improperly deny the taxpayers any deduction for depreciation, mortgage interest payments, taxes, and other expenditures related to maintenance of real property from which the taxpayers derived rental income; (2) Was the Tax Court's determination of the price at which the taxpayers sold certain real property during tax year 1977 erroneous; and (3) Did the Tax Court incorrectly conclude that Ronald Lerch failed to report a particular item of income on his 1981 tax return.

## I. FACTUAL BACKGROUND [1]

Between July 1983 and April 1985, the Commissioner sent the Lerches a total of

---

**1.** Only those details vital to this appeal are recounted here. For a full description of the Lerches' tax woes see the Tax Court's opinion,

five notices of tax deficiency, claiming that the Lerches had underpaid their federal income taxes for the tax years 1977 through 1981 by more than $300,000. The Commissioner also asserted additions to tax for fraud against the Lerches for the tax years of 1977 and 1978, and negligence penalties for the tax years of 1979 and 1980. Fraud penalties were claimed against Mr. Lerch for the 1981 tax year; negligence penalties were alleged against Mrs. Lerch for the same year.

The Lerches petitioned the United States Tax Court for review of the Commissioner's deficiency determinations against them. During the course of discovery related to the pending litigation, the Commissioner amended the original deficiency determinations asserted against the Lerches. The Commissioner claimed increased deficiencies and fraud penalties for the 1977 and 1979 tax years. Additional deficiencies and negligence penalties were asserted for the tax year 1980.

The Lerches thereafter engaged in a pattern of procedural maneuvers, the aim of which appears to have been avoidance of trial on the deficiency determinations. Two of the five Tax Court cases involving these taxpayers were initially set for trial on January 28, 1986 in Phoenix, the location of the Lerches' tax counsel. On January 13, 1986 the Lerches obtained a consolidation order combining the Phoenix cases with three others pending on the Tax Court's Indianapolis docket. Trial on all five petitions was scheduled for April 28, 1986 in Indianapolis.

On April 23, 1986 the Lerches filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Illinois, which halted the Tax Court proceedings under the automatic stay provision of the Bankruptcy Code.[2] Mr. Lerch filed for bankruptcy under Chapter 11, Mrs. Lerch

under Chapter 7. On the morning of April 28, 1986, attorneys for the Commissioner petitioned the bankruptcy court for relief from the automatic stay, requesting that the Tax Court proceeding be permitted to go forward as planned. The bankruptcy judge lifted the stay as to the taxpayers as individuals (as opposed to their estates in bankruptcy) over the objection of the Lerches' bankruptcy attorney. The Lerches made an emergency appeal to the United States District Court seeking relief from the bankruptcy court's ruling, arguing that they were being improperly deprived of the protection of the Bankruptcy Code's automatic stay provision, and that they would have to proceed without counsel in the Tax Court because their tax attorney, Mr. Grant, had not received approval from the bankruptcy judge to represent their estates in the tax case.

These contentions were properly rejected by the district court, as no prejudice to the bankruptcy estates would result from the Tax Court's determination of the individual tax liability of the debtors, and the bankruptcy court's approval of Mr. Grant's representation of the taxpayers was unnecessary because neither the trustee of Mrs. Lerch's estate nor the debtor in possession of Mr. Lerch's estate was involved in the Tax Court litigation.[3] The district court therefore affirmed the lifting of the stay on April 30, 1986. On the same day, the Tax Court denied the Lerches' motion for a continuance (made for them by their bankruptcy attorney) and instructed the Lerches to appear for trial on the following morning.

Trial began on the Lerches' petitions on the morning of May 1, 1986. Mr. Grant, the Lerches' tax attorney, failed to appear at the proceedings without leave of the Tax Court.[4] Mr. Lerch orally moved for a con-

---

*Lerch v. Commissioner,* 53 T.C.M. (CCH) 1101 (1987).

**2.** *See* 11 U.S.C. § 362(a)(8).

**3.** It appears that the true reason for Mr. Grant's inability to represent the Lerches before the Tax Court was either a fee dispute between him and the Lerches or a lack of sufficient preparation

on his part resulting from his reliance on the Bankruptcy Code's automatic stay provision, or both.

**4.** Judge Parker found Mr. Grant's failure to appear to be inexcusable, unprofessional and possibly sanctionable. She did not, however, grant the continuance which Mr. Lerch orally requested on the morning trial began. It is not clear

tinuance, which was denied. Thereafter, trial proceeded with Mr. and Mrs. Lerch representing themselves. Although the Tax Court gave the Lerches sufficient opportunity to present witnesses and documentary evidence to rebut the Commissioner's claimed increases in the Lerches' tax liability, the Lerches offered virtually no evidence, either testimonial or documentary. Mr. Lerch repeatedly refused to answer questions, basing his refusal on his fifth amendment privilege not to incriminate himself.[5] In the end, the Tax Court upheld essentially all of the Commissioner's claimed deficiencies against the Lerches, with some modifications based primarily upon computational errors committed by the Commissioner.

## II. ANALYSIS

The Lerches raise only three narrow issues on appeal. First, they question the Tax Court's disallowance of any deductions for depreciation, mortgage loan interest payments, taxes, and other ordinary and necessary expenses associated with their ownership of income-generating rental property during the 1979, 1980 and 1981 tax years. Second, the Lerches contend that the Tax Court erroneously set the selling price on a piece of real estate that the Lerches sold in 1977 at $100,000. Finally, the Lerches claim that the Tax Court wrongly decided that Mr. Lerch failed to report, as part of his gross income for 1981, a $15,750 commission he earned as a sales representative. We address each of these issues in turn.

### A. *Ordinary and Necessary Business Expense Deductions*

During the tax years at issue, the Lerches owned property in Fort Wayne, Indiana (referred to as the Pittsburg Street property) which they leased to Power–Hose Coupling, Inc. (now known as Power Products, Inc. but referred to here as Power–Hose), a closely held corporation owned by the Lerches and a few of their relatives. Power–Hose conducted its business from the Pittsburg Street property. The Lerches received rental income from the lease to Power–Hose every year at issue in this appeal. The Lerches fully reported that income on their returns. The Lerches also claimed depreciation and expense deductions related to the Pittsburgh Street property. The Commissioner did not contest the Lerches' claim to these deductions for the tax years 1977 and 1978. For the years 1979, 1980 and 1981, however, the Commissioner disallowed all deductions, including depreciation, mortgage interest payments, taxes, and other expenses relating to the Pittsburgh Street property.[6] The Tax Court affirmed these disallowances, despite the Lerches' contention that the rule laid down in *Cohan v. Commissioner*, 39 F.2d 540, 544 (2d Cir.1930), required the Commissioner to give the Lerches some allowance for these deductions, even absent documentation by the Lerches. The Lerches argue that the Tax Court erroneously refused to apply the *Cohan* doctrine to their claims of deductible expenses.

In *Cohan* the taxpayer, George M. Cohan, had not maintained records of items he claimed as business entertainment expenses. The Commissioner disallowed the

from the record why Mr. Grant was not present at trial; his absence may have been a last ditch effort by the Lerches to put off the inevitable— some final and definite determination of their tax liability. In any event, the Lerches do not challenge the Tax Court's decision on the basis of their lack of representation.

5. The Tax Court found Mr. Lerch's refusal to answer a bit puzzling at times, as there were no criminal charges against Mr. Lerch. The court, however, permitted Mr. Lerch to refuse to answer any question he chose not to, including those which could hardly have led to any incriminating revelations.

6. The Lerches argue that because the Commissioner did not disallow such deductions in 1977 and 1978, they should not be disallowed on their 1979, 1980 and 1981 returns. As the Commissioner's brief correctly notes, however, the Commissioner is not bound in any given tax year to allow a deduction permitted in a previous year. *Knights of Columbus Council No. 3660 v. United States,* 783 F.2d 69 (7th Cir.1986); *Walker v. Commissioner,* 362 F.2d 140 (7th Cir. 1966).

entire deduction, despite the fact that the taxpayer established that he did indeed have some such expenses. The Board of Tax Appeals (the precursor to the modern Tax Court) affirmed the Commissioner's decision. The Second Circuit reversed, however, holding that when the Commissioner concedes the legitimacy of a claimed deduction, the deduction cannot be entirely disallowed merely because the taxpayer cannot prove an exact figure. Writing for the court, Judge Learned Hand stated:

> Absolute certainty in such matters is usually impossible and is not necessary; the Board should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making. But to allow nothing at all appears to us inconsistent with saying that something was spent. True, we do not know how many trips Cohan made, nor how large his entertainments were; yet there was obviously some basis for computation, if necessary by drawing upon the Board's personal estimates of the minimum of such expenses. The amount may be trivial and unsatisfactory, but there was basis for some allowance, and it was wrong to refuse any, even though it were the traveling expenses of a single trip. It is not fatal that the result will inevitably be speculative; many important decisions must be such. We think that the Board was in error as to this and must reconsider the evidence.

*Cohan*, 39 F.2d at 544.

In the past this court has repeatedly recognized the applicability of the *Cohan* rule. *See, e.g., Zeddies v. Commissioner*, 264 F.2d 120 (7th Cir.) (estimating taxpayer's expenses where taxpayer failed to substantiate claims beyond mere proof of their existence), *cert. denied*, 360 U.S. 910, 79 S.Ct. 1295, 3 L.Ed.2d 1260 (1959); *Prokop v. Commissioner*, 254 F.2d 544 (7th Cir. 1958) (estimating how much of embezzled funds were attributable to taxpayer as income); *Rogers v. Commissioner*, 248 F.2d 452 (7th Cir.1957) (estimating taxpayer income earned from bookmaking); *Bodoglau v. Commissioner*, 230 F.2d 336, 340 & n. 3 (7th Cir.1956) (estimating taxpayer's cash on hand at beginning of net worth period); *Pleason v. Commissioner*, 226 F.2d 732 (7th Cir.) (estimating actual business income), *cert. denied*, 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1955).

The current vitality of the *Cohan* rule in the immediate context is open to question however. The present trend, while not to repudiate the *Cohan* rule entirely, is to not invoke it where the claimed but unsubstantiated deductions are of a sort for which the taxpayer could have and should have maintained the necessary records. For example, in *Pfluger v. Commissioner*, 840 F.2d 1379 (7th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 2906, 101 L.Ed.2d 938 (1988), the taxpayer, a dentist, failed to provide any documentary evidence to support over $10,000 in deductions for dental supplies and equipment. This court, in response to Dr. Pfluger's appeal of the disallowance, noted:

> Undoubtedly, Dr. Pfluger spent money on materials, but he refused to produce the evidence to *prove* these expenditures. We cannot simply guess as to the amount he could have deducted. He chose his uncooperative path; the fact that he will pay more tax than if he had been more forthright should not cause us to bend the law in his favor.

*Pfluger*, 840 F.2d at 1386 (emphasis in original).

We went on to hold in *Pfluger* that the Tax Court was not obligated to make an estimate under the *Cohan* rule, despite the fact that the taxpayer undoubtedly spent substantial sums of money on materials, where the taxpayer completely failed to cooperate with the Commissioner and the Tax Court, and refused even to attempt to substantiate the claimed deductions.

> The Pflugers' argument is clearly wrong when viewed in context. They willfully refused to cooperate with the audit. They cannot thereby force the Commissioner to resort to "averages" to estimate the deductions that they could have taken. If that were the case, nobody would cooperate with an audit. The use of estimates could often result in allowance of more deductions than the

taxpayer was actually entitled to take; if it did not, the taxpayer would simply petition for a redetermination and substantiate greater deductions. The Tax Court has correctly rejected such a rule in prior cases.

*Pfluger,* 840 F.2d at 1383. Our view of the *Cohan* rule echoes that of other courts in more recent years.[7] *See Lutheran Mutual Ins. Co. v. United States,* 816 F.2d 376, 379 (8th Cir.1987); *Bay Sound Transp. Co. v. United States,* 410 F.2d 505, 511 (5th Cir.), *cert. denied,* 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969).

In the present case, documents to support the types of deductions the Lerches claim could easily have been produced; even something as simple as cancelled checks showing mortgage or tax payments would have bolstered the Lerches' challenge.[8] Instead the Lerches chose to appear before the Tax Court with no documentation whatsoever to substantiate these deductions, and offered as an excuse that they either could not find documents subpoenaed by the Tax Court or they had left the documents on the kitchen table that morning. As we noted in *Pfluger,* the Tax Court is not obligated to protect taxpayers from the results of their own obstinacy, and there is no duty to invoke the *Cohan* rule in aid of taxpayers who willfully disobey the Tax Court.[9] We find no error in the Tax Court's decision to refuse to apply the *Cohan* rule to the Lerches' claim for business expense deductions related to the Pittsburg Street property.

## B. The Purchase Price of the Maumee Street Property

■ Prior to leasing the Pittsburg Street property from the Lerches, Power–Hose leased another piece of property owned by the Lerches located on Maumee Street in Fort Wayne. Power–Hose operated at the Maumee Street site from sometime in the 1960s until 1973, when Power–Hose moved to the Pittsburg Street location. The Lerches sold the Maumee Street property in April 1977, but failed to report the gain earned from that sale on their tax return for that year. At trial the Lerches con-

---

7. One commentator explains this emerging phenomenon in these terms:

> In asserting in another part of the *Cohan* opinion that the taxpayer probably could not have kept detailed records of his expenditures, Judge Hand may have been right as to taxpayers in 1921 and 1922, the taxable years before the court. Since then, the process of evolution-nudged along by the Internal Revenue Code—has produced a more docile race of taxpayers, with record-keeping habits that more freehanded earlier generations would have thought demeaning. A case can be made for restricting the *Cohan* doctrine to areas in which record keeping remains counter-cultural, and for refusing to apply it to areas in which documentary evidence is customarily requested and retained by the average taxpayer, unless its absence is satisfactorily explained (e.g., destruction by casualty).

1 B. Bittker, *Federal Taxation of Income, Estates, and Gifts* ¶ 20.1.9, at 20–24 (1981).

8. The Lerches in fact received a subpoena duces tecum ordering them to provide documents to the Commissioner and the Tax Court, and yet the Lerches showed up at trial with almost no documents, and a number of implausible excuses. What little documentary evidence they did bring was apparently a jumbled mess thrown into a box and offered to opposing counsel as the trial began. The Lerches' brief in this court emphasizes the Commissioner's failure to wade through whatever unidentified papers they brought with them on the morning trial began. Given the fact that the Lerches had many earlier opportunities to cooperate with the Commissioner, the Tax Court judge had little sympathy for this plea. Neither have we.

9. Further, while *Cohan* and its progeny permit the fact finder to make estimates where there is only inexact proof of figures, the *Cohan* rule is rarely compulsory.

> [T]he trier, whether District Court or Tax Court, might have considerable latitude in making estimates of amounts probably spent ... [but *Cohan*] certainly does not require that such latitude be employed. The District Court may not be compelled to guess or estimate even though such an estimate, if made, might have been affirmed.

*Williams v. United States,* 245 F.2d 559, 560 (5th Cir.1957). It appears that the only time some estimate *must* be made is in the classic *Cohan* situation, where the taxpayer claims a deduction, and the Commissioner recognizes that the taxpayer has a legitimate claim to the deduction, only the taxpayer has failed to establish exactly how much that deduction ought to be. *Oates v. Commissioner,* 316 F.2d 56, 59 (8th Cir.1963). Under *Cohan,* the Commissioner cannot concede the existence of some proof of deductability and then disallow the deduction entirely, merely because the taxpayer cannot prove all of the claimed deduction.

ceded that they owed additional tax for 1977 as a result of the Maumee Street property sale, but they disagreed with the Commissioner's determination of gain realized on the sale. The Commissioner argued that the Lerches had realized a long-term capital gain in excess of $64,789 on the sale. The Lerches, while admitting that they had erroneously failed to report the sale, contended that they had realized a long-term capital gain of only $29,787.

It was undisputed at trial that the Lerches purchased the Maumee Street property in 1965 for $50,000. The Lerches' adjusted basis in the Maumee Street property at the time of sale was determined to be $34,375. The Lerches claimed that they had sold the Maumee Street property for only $65,000; the Commissioner alleged they had sold it for $100,000. Each side offered evidence to substantiate its claim.

The Commissioner produced and entered into evidence a copy of a Mortgage Loan Settlement Sheet from Fort Wayne National Bank, which indicated that the contract price for the Maumee Street property was $100,000. This settlement sheet bore the signatures of the Lerches and the buyers, Bill and Ruth Liechty. In addition, the Commissioner produced a copy of a sales contract indicating a sale price of $100,000 and a down payment on the property of $36,000.

The Lerches, on the other hand, produced evidence that the true selling price of the Maumee Street property was $65,000. Mr. Lerch produced a signed sales contract, identical to the one offered by the Commissioner (even down to the execution date), except that the Lerches' copy of the contract indicated that the Maumee Street property's selling price was $65,000. Mr. Lerch testified that the selling price was $65,000, with $1,000 paid as down payment and the balance paid when the Liechty's loan came through. Mrs. Ruth Liechty testified that to the best of her knowledge $65,000 was the selling price on the Maumee Street property, and that while she and her husband expended a good deal of money in renovating the Maumee Street property before they actually bought it,

they had not made a $36,000 down payment on the property. It was undisputed that the Fort Wayne National Bank issued the check tendered to the Lerches for the property. The check was in the amount of $63,164.17.

The selling price of the Maumee Street property was a question of fact to be determined by the Tax Court. We review factual determinations of the Tax Court under the clearly erroneous standard of review. *Cole v. Commissioner*, 871 F.2d 64, 66 (7th Cir.1989); *Eli Lilly & Co. v. Commissioner*, 856 F.2d 855, 860–61 (7th Cir.1988). Under this standard we will affirm the Tax Court's factual determinations if "the evidence is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985), *quoted in Cole*, 871 F.2d at 67. After reviewing all the evidence, the Tax Court found that the true selling price of the Maumee Street property was $100,000. Noting the conflicting documentary and testimonial evidence, the Tax Court based its findings on the following:

Ruth Liechty, one of the buyers of the Maumee property and also a real estate broker, testified she believed the sales price of the Maumee property was $65,-000. However, she did not recall being present at the closing and we have accorded little weight to her testimony. There is no satisfactory explanation as to why there were two different sales agreements executed by petitioners on November 26, 1976, each with a different sales price. In any event, we are satisfied that the sales price of the Maumee Property was $100,000. The Mortgage Loan Department Settlement Sheet of the sale clearly indicates that the sales price was $100,000. The settlement sheet also indicates that petitioners received a down payment of $36,000 with $64,000 due at closing. The $36,000 down payment was described as including "equity on trade-in of office facility at 3130 E. Washington Blvd." The cashier's check in the amount of $63,164.17 that petitioners received from the sale represents the $64,000 balance due less

the expenses of the closing attributable to the sellers. *Lerch v. Commissioner*, 53 T.C.M. (CCH) 1101, 1106 n. 16 (1987). The Tax Court was faced with the resolution of a direct factual conflict. The court, after viewing all the evidence and assessing the credibility of the witnesses, determined that the Maumee Street property sold for $100,000. Nothing in the record or the parties' briefs convinces us that the Tax Court's finding was clearly erroneous. The Tax Court's decision therefore stands.

## C. Additions to Income from Sales Commissions

During the tax years in question, Mr. Lerch operated a sole proprietorship doing business as 20th Century Products, a manufacturing representative company that marketed power transmission items, belts, pulleys, etc. The Dynacraft Co., a division of Paccar, Inc., made sales commission payments to Mr. Lerch under the 20th Century Products name during the tax year of 1981 in the amount of $15,750. Mr. Lerch reported $50,496 in gross receipts for 20th Century Products on his individual 1981 tax return. The Commissioner asserted that the gross figure did not include the commission payments made by Dynacraft to Mr. Lerch and therefore claimed a deficiency in income in this amount. At trial, Mr. Lerch contended that the gross income figure listed on Schedule C of his 1981 tax return for 20th Century Products included the allegedly unreported commission payments. Mr. Lerch did not offer any documentation to substantiate or support this claim however. The Tax Court therefore found in favor of the Commissioner, and permitted the addition to income in the amount of the commission payments.

■ As noted above, factual findings made by the Tax Court are evaluated under the clearly erroneous standard of review. *Cole*, 871 F.2d at 66; *Eli Lilly*, 856 F.2d at 860–61. The determination of whether a specific item of income was reported on a given tax return is without question a factual issue. The Lerches admit that they bear the burden of proof in the Tax Court of proving that an item of income has been included in a tax return. Further, they concede that the Commissioner's determination of a deficiency is entitled to a presumption of correctness and that they bear the burden of proving that determination to be incorrect. *Welch v. Helvering*, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). "Once the taxpayer overcomes the presumption by presenting 'competent and relevant credible evidence,' ... which is sufficient to establish that the Commissioner's determination was erroneous ... then the Commissioner ha[s] the burden of going forward with the evidence." *Demkowicz v. Commissioner*, 551 F.2d 929, 931 (3d Cir. 1977) (citations omitted). A taxpayer's uncontradicted testimony is sufficient to establish that the Commissioner's determinations are erroneous. *Id.* The Tax Court is not bound to accept a taxpayer's uncontradicted testimony, however, if it is found to be "improbable, unreasonable or questionable." *Id.* (citations omitted). The Tax Court may disregard uncontradicted testimony by a taxpayer where it finds that testimony lacking in credibility. Once the Tax Court makes that finding, if the taxpayer has offered no other evidence in support of his position, the Tax Court has no choice but to rule for the Commissioner, since the taxpayer has failed to carry his requisite burden of proof. This is precisely what occurred in the present case.

■ At trial the only evidence Mr. Lerch offered to prove his claim was his uncontradicted testimony that Schedule C attached to the return included the Dynacraft commission payments made to 20th Century Products in 1981. When questioned about substantiation of this claim, Mr. Lerch stated that he had made computations at home the night before the trial but he had forgotten (as with all the other documentation he claimed to have) to bring the paperwork with him to court. In her opinion finding that the Lerches had failed to carry their burden of proof, the Tax Court judge noted that Mr. Lerch's testimony that he had included the $15,750 commission payments in Schedule C, although uncontradicted, was not credible. "[W]e need not accept petitioner's self-serving

testimony, even if it is uncontradicted, if the Court finds the testimony unreasonable, improbable, or questionable. *Lowell and Hart, Inc. v. Commissioner,* 456 F.2d 145, 148 (6th Cir.1972); *Ruark v. Commissioner,* 449 F.2d 311, 312 (9th Cir.1971)." *Lerch,* 53 T.C.M. (CCH) at 1117. *Accord Estate of DeNiro v. Commissioner,* 746 F.2d 327, 330–31 (6th Cir.1984); *Demkowicz,* 551 F.2d at 931. Mr. Lerch failed to provide any documentation whatsoever to substantiate his claim that the $50,496 figure reflected the $15,750 in commission payments. The trial court found that "there is no probative evidence in the record to establish that the amount [Mr. Lerch] reported as gross receipts included the $15,750 he received from Dynacraft." *Lerch,* 53 T.C.M. (CCH) at 1117.

It is quite clear from the trial transcript that the Tax Court had serious doubts about Mr. Lerch's sincerity and credibility at a number of junctures. As a result, the Tax Court found Mr. Lerch's testimony on this topic, among others, to be questionable. After examining the record we cannot say that the Tax Court was unjustified in its reservations. Mr. Lerch was a very recalcitrant participant in a process he initiated—a process designed to resolve problems that, in the instant case, Mr. Lerch himself created by attempting to avoid the payment of lawful taxes. The Tax Court was entirely justified in giving no weight to Mr. Lerch's testimony, uncontradicted though it was. It was therefore not clearly erroneous to find that Mr. Lerch failed to report the $15,750 in commission payments as income on his 1981 income tax return.

### III.  CONCLUSION

For the reasons stated above the Tax Court's decision is AFFIRMED.