T.C. Memo. 2000-39


UNITED STATES TAX COURT


JOHN CHARLES TREADAWAY, SR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8583-98.                    Filed February 8, 2000.


John Charles Treadaway, Sr., pro se.

<u>Katherine Holmes Ankeny</u>, <u>Richard A. Rappazzo</u>, and

<u>J. Robert Cuatto</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, <u>Judge</u>:  Respondent determined the following defi-

ciencies in, and accuracy-related penalties under section

6662(a)[1] on, petitioner's Federal income tax (tax):

---

[1]All section references are to the Internal Revenue Code in
                                        (continued...)

| Year | Deficiency | Accuracy-Related Penalty |
|------|-----------|--------------------------|
| 1994 | $27,859 | $5,572 |
| 1995 | 18,975 | 3,795 |

We must decide whether to sustain the determinations in the notice of deficiency (notice) that respondent has not conceded. We hold that those determinations should be sustained except to the extent stated herein.

FINDINGS OF FACT[2]

Some of the facts have been stipulated and are so found.

Petitioner resided in Phoenix, Arizona, at the time the petition was filed.

Petitioner, who has a B.S. in engineering, an M.A. in philosophy, and a law degree, was married to Anne P. Treadaway (Ms. Treadaway) until she died at the age of 94 on June 12, 1995. He has two children from that marriage, Penelope Treadaway and John Treadaway, Jr.

Petitioner and, until she died, Ms. Treadaway lived together with their son John Treadaway, Jr., in a 5,400-square-foot house (petitioner's residence) located at 3140 North 83d Avenue in Phoenix, Arizona (North 83d Avenue property). Petitioner's daughter Penelope Treadaway, her son, and her boyfriend lived in

---

[1](...continued)
effect for the years at issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Unless otherwise indicated or needed for clarity, our Findings of Fact and Opinion pertain to the years at issue.

a 2,000-square-foot house located on that property. The North 83d Avenue property also contained a guest house which adjoined petitioner's residence and a swimming pool.

At least five automotive vehicles were used and/or kept at the North 83d Avenue property, including two pickup trucks and three automobiles. Neither petitioner nor Ms. Treadaway was able to drive any of those vehicles during the years at issue.

As of the trial in this case, petitioner had been operating a tax consulting business (tax consulting business) for approximately 30 years. As part of that activity, petitioner represented taxpayers before the Internal Revenue Service. During the years at issue, petitioner operated the tax consulting business from a room located in petitioner's residence.

Ms. Treadaway, who began riding horses when she was about six years old, started providing horse-training and other horse-related services around 1929. (We shall refer to those horse-related services as horse-training activities.) At least during the years at issue, the horse-training activities were conducted on the North 83d Avenue property. Ms. Treadaway continued her riding and the horse-training activities until she was no longer able to do so because of her deteriorating medical condition, which included Alzheimer's disease. As of July 1994, Ms. Treadaway's Alzheimer's disease was in an advanced stage. As a result of Ms. Treadaway's medical condition, Ms. Treadaway was

not able to participate actively in the horse-training activities during the years at issue.

Penelope Treadaway, who has been riding horses since she was four years old, was involved in the horse-training activities at least throughout the years at issue. During 1995, Penelope Treadaway gave horseback riding lessons to approximately four or five people. After Ms. Treadaway died in June 1995, Penelope Treadaway continued to operate the horse-training activities and also started a full-time job in construction.

On May 5, 1994, Ms. Treadaway sold to Grapevine 7, Inc., certain real property that she owned which was located in Brenda, Arizona (Brenda real property). Ms. Treadaway received $3,000 at the closing of that sale.

Petitioner owned about 10 acres of real property in Tonapah, Arizona (Tonapah property), on which a house was situated. Petitioner did not rent that house or property, nor was that property used for any of the horse-training activities.

During the years at issue, petitioner and Ms. Treadaway received the following Social Security benefits:

|  | 1994 | 1995 |
| --- | --- | --- |
| Petitioner | $8,641 | $8,880 |
| Ms. Treadaway | 4,320 | 2,220 |

Sometime after Ms. Treadaway died, petitioner remarried and moved from petitioner's residence to a house located at 3138

North 43d Avenue in Phoenix, Arizona (North 43d Avenue house). In October 1996, the North 43d Avenue house was burglarized (October 1996 burglary). The Phoenix police department investigated the October 1996 burglary. The investigating police officers prepared several reports on behalf of the Phoenix police department with respect to that burglary (police reports). The police reports listed various items of property that petitioner and/or his then spouse had told the investigating police officers were missing as a result of the October 1996 burglary (claimed missing property). The claimed missing property listed in the police reports did not include any records identified as tax records, banker boxes, or steel filing cabinets.

At a time not established by the record, an individual (plaintiff) instituted litigation against petitioner. The plaintiff claimed in that litigation that petitioner had improperly used for petitioner's personal use $150,000 that belonged to the plaintiff. After that litigation was concluded, petitioner pled guilty in December 1989 under the applicable criminal statutes of the State of Arizona to obtaining a signature by deception on October 27, 1986.

Petitioner and Ms. Treadaway filed a Form 1040, U.S. Individual Income Tax Return (tax return), for each of the years 1991 through 1994. They indicated in each of those tax returns that their filing status was "Married filing joint return (even if

only one had income)".  The 1994 joint return was signed by petitioner and Anne Treadaway.  The signature of Anne Treadaway on the 1994 joint return is different from petitioner's signature on that return.  Petitioner, as the surviving spouse, filed a tax return for 1995 on behalf of his deceased spouse Ms. Treadaway and himself.  Petitioner indicated in that tax return that their filing status was "Married filing joint return (even if only one had income)".  The 1995 return was signed by petitioner.  There was no signature on that return by Ms. Treadaway, who was deceased at the time the return was filed.  Instead, the following statement was typed on the line for her signature:  "Filing as surviving spouse".  (We shall refer to the joint tax returns filed by petitioner and Ms. Treadaway for 1991 through 1994 and by petitioner as the surviving spouse for 1995 on behalf of his deceased spouse Ms. Treadaway and himself as joint returns.)

Petitioner retained Anna Sheets (Ms. Sheets) to prepare the 1994 and 1995 joint returns.  He provided Ms. Sheets with all of the income and expense figures that are reflected in those returns.

Included in each of the joint returns for 1991 through 1995 were a Schedule C, Profit or Loss From Business, and a Schedule F, Profit or Loss From Farming.  Schedule C of each of those joint returns identified petitioner as the proprietor and showed business counsel services or counsel services as the services

that he was providing. Petitioner and Ms. Treadaway claimed in Schedules C of the 1994 and 1995 joint returns expenses for legal and professional services of $13,588 and $13,823, respectively.

Schedule F of each of the joint returns for 1991 through 1995 identified Ms. Treadaway as the proprietor and, except for the 1995 joint return,[3] showed training horses as the activity in which she was engaged. Schedules F of those joint returns reported the following income, expenses, and net loss:

| Year | Income Reported | Total Expenses Claimed | Net Loss Claimed |
|------|-----------------|------------------------|------------------|
| 1991 | $22,285 | $72,512 | $50,227 |
| 1992 | 24,806 | 47,328 | 22,522 |
| 1993 | 25,820 | 59,805 | 33,985 |
| 1994 | 27,245 | 60,100 | 32,855 |
| 1995 | 32,170 | 48,036 | 15,326 |

Included within the foregoing expenses claimed for 1995 were the following amounts of expenses paid during that year with respect to the horse-training activities:

| Nature of Expense | Amount Paid |
|-------------------|-------------|
| Feed | $9,351.46 |
| Veterinary expense for shoeing horses | 200.00 |
| Horse supplies | 279.91 |
| Sawdust | 270.00 |

Also included within the foregoing expenses claimed for 1994 and

---

[3]Schedule F of the 1995 joint return did not identify the activity in which Ms. Treadaway was engaged.

1995 were the total amounts of real property taxes and utilities paid with respect to petitioner's residence.

The joint returns for 1991 through 1995 claimed net operating loss deductions in the respective amounts of $68,739, $75,593, $48,533, $57,136, and $40,343 with respect to claimed net operating loss carryovers from prior years.

Petitioner and Ms. Treadaway did not report in the 1994 joint return the $3,000 that Ms. Treadaway received from the sale of the Brenda property on May 5, 1994.

Petitioner and Ms. Treadaway did not report as income in the 1994 and 1995 joint returns any of the Social Security benefits that they received during those years.

Respondent issued the notice with respect to 1994 and 1995 to petitioner and Anna P. Treadaway, deceased.[4]  In that notice, respondent disallowed the deductions claimed for legal expenses in Schedules C of the 1994 and 1995 joint returns because it was not established that those claimed expenses (1) were expended, (2) were expended for the purposes stated in those schedules, and (3) constitute ordinary and necessary business expenses.

Respondent further disallowed in the notice the deductions claimed for expenses in Schedules F of the 1994 and 1995 joint returns because it was not established that those claimed expenses (1) were expended, (2) were expended for the purposes

---

[4]Ms. Treadaway's first name was Anne, not Anna.

stated in those schedules, and (3) constitute ordinary and necessary business expenses. Respondent determined in the alternative that the deductions claimed in Schedules F of the 1994 and 1995 joint returns were for expenses incurred in an activity not entered into for profit and increased the taxable income reported in those returns by the respective losses of $32,855 and $15,326 claimed in those schedules (i.e., by the excess of the deductions claimed over the income reported in each such schedule).

Respondent further disallowed in the notice the net operating loss deductions claimed in the 1994 and 1995 joint returns.

Respondent also determined in the notice that the joint return for 1994 improperly did not report the $3,000 that Ms. Treadaway received in that year from the sale of the Brenda property, that no basis in excess of zero in that property was established, and that that amount is capital gain.

Respondent further determined in the notice that, because of other determinations therein, 85 percent of the respective amounts of Social Security benefits that petitioner and Ms. Treadaway received during 1994 and 1995 are includible in taxable income for those years.

Respondent also determined in the notice that all of the underpayment of tax for 1994 and 1995, as determined therein, was due to negligence or disregard of rules or regulations and

therefore imposed the accuracy-related penalty under section 6662(a) on each such underpayment.[5]

## OPINION

Petitioner bears the burden of proving that the determinations in the notice are erroneous. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner attempted to satisfy that burden through his own testimony and certain documentary evidence. We found petitioner's testimony to be questionable, vague, conclusory, evasive, and/or uncorroborated in certain material respects. Under these circumstances, we are not required to, and we shall not, rely on petitioner's testimony to sustain his burden of establishing error in the determinations of respondent that remain at issue. See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). As for the documentary evidence on which petitioner relies, except as discussed below, we are not persuaded by that evidence that the determinations which respondent does not concede are wrong.[6]

---

[5]Because of the determinations in the notice that increased self-employment income, respondent also determined in the notice to make correlative adjustments to self-employment tax for 1994 and 1995.

[6]We note that petitioner attempted to attach to his opening (continued...)

We shall first address petitioner's position regarding the determinations in the notice with respect to (1) the deductions claimed in Schedules F of the 1994 and 1995 joint returns, (2) the amount that Ms. Treadaway received during 1994 from the sale of the Brenda property, (3) the Social Security benefits that Ms. Treadaway received during the years at issue, and (4) the net operating loss deductions claimed in the 1994 and 1995 joint returns. As we understand petitioner's position, the property used in the horse-training activities and the income therefrom, the Brenda property and the income therefrom, and the Social Security benefits that Ms. Treadaway received constituted the separate property of Ms. Treadaway, and not community property, under the community property law of the State of Arizona. Consequently, according to petitioner, he is not liable for the

---

[6](...continued)
brief certain documents that are not part of the record. The Court had those documents returned to petitioner. We also note that we have serious reservations about petitioner's claim that documentation substantiating the expenses claimed in Schedules C of the 1994 and 1995 joint returns was stolen or destroyed during the October 1996 burglary. The claimed missing property listed in the police reports with respect to that burglary did not include any records identified as tax records, banker boxes, or steel filing cabinets in which petitioner claims he kept records relating to those returns. Moreover, even if petitioner had persuaded us that documentation substantiating the expenses claimed in Schedules C of the 1994 and 1995 joint returns had been stolen or destroyed during the October 1996 burglary, petitioner would have to meet his burden of proof in this case by presenting credible secondary evidence. As noted above, we are unwilling to rely on petitioner's testimony in this case to support his position that respondent's determinations in the notice are erroneous.

portion of the deficiency (and the accuracy-related penalty) for each of the years 1994 and 1995 that is attributable to determinations in the notice with respect to that alleged separate property of Ms. Treadaway. Petitioner also argues that he is not liable for the portion of the deficiency (and the accuracy-related penalty) for each of the years 1994 and 1995 that is attributable to the determinations in the notice disallowing the net operating loss deduction claimed in the joint return for each of those years. That is because, according to petitioner, those claimed net operating loss deductions were generated by the horse-training activities which petitioner maintains utilized property and generated income that were the separate property of Ms. Treadaway.

Based on our examination of the record in this case, we find that petitioner has failed to establish that any of the property that petitioner claims was the separate property of Ms. Treadaway did in fact constitute her separate property under the law of the State of Arizona.

Assuming arguendo that petitioner had established that the property in question was the separate property of Ms. Treadaway, on the record before us, we nonetheless reject petitioner's position that he is not liable for the portion of the deficiency (and the accuracy-related penalty) for each of the years at issue that is attributable to respondent's determinations which we

sustain below with respect to the deductions claimed in Schedules
F of the 1994 and 1995 joint returns, the amount that Ms.
Treadaway received during 1994 from the sale of the Brenda
property, the Social Security benefits that Ms. Treadaway re-
ceived during the years at issue, and the net operating loss
deductions claimed in the 1994 and 1995 joint returns.  That is
because petitioner and Ms. Treadaway filed a joint return for
1994, and pursuant to section 6013(a)(3),[7] petitioner, as the
surviving spouse, filed a joint return for 1995 on behalf of his
deceased spouse Ms. Treadaway and himself.  Since a joint return
was made for each of the years at issue, the tax is to be com-
puted on the aggregate income for each such year, and the liabil-
ity with respect to that tax is to be joint and several.  See
sec. 6013(d)(3).

In an apparent effort to avoid joint and several liability
under section 6013(d)(3) with respect to the 1994 and 1995 joint
returns, petitioner asserts that "the purpose for filing a form

---

[7]Sec. 6013(a)(3) provides that in the case of the death of
one spouse the joint return may be made by the surviving spouse
with respect to both himself and the deceased spouse if no return
for the taxable year has been made by the deceased spouse, no
executor or administrator has been appointed, and no executor or
administrator is appointed before the last day prescribed by law
for filing the return of the surviving spouse.  On the record
before us, we find that petitioner has failed to show that a
return for 1995 was made by Ms. Treadaway, that an executor or
administrator was appointed, or that an executor or administrator
was appointed before the last day prescribed by law for filing
the 1995 return of petitioner.

on a 1040, wherein the filing status was designated as 'married, filing joint returns' * * * [was] that Anne P. Treadaway had advanced Alzheimer's disease". That petitioner may have filed joint returns for 1994 and 1995 because Ms. Treadaway had advanced Alzheimer's disease does not mean that he is not jointly and severally liable for any deficiencies and accuracy-related penalties that the Court determines for those years. Petitioner was not required to file a joint return for 1994 or for 1995, nor was he required to file a separate return for each of those years. He had a choice. Consistent with the practice of Ms. Treadaway and petitioner who filed joint returns since at least taxable year 1991, petitioner decided to file (1) a joint return with Ms. Treadaway for 1994[8] and (2) a joint return for 1995 as the surviving spouse of Ms. Treadaway pursuant to section 6013(a)(3).[9]

On the record before us, we find that petitioner has failed to establish that he is not jointly and severally liable for a portion of the deficiencies and the accuracy-related penalties

---

[8]The 1994 joint return was signed by petitioner and Anne Treadaway. The signature of Anne Treadaway on the 1994 joint return is different from petitioner's signature on that return.

[9]The 1995 joint return was signed by petitioner. There was no signature on that return by Ms. Treadaway who was deceased at the time the return was filed. Instead, the following statement was typed on the line for her signature: "Filing as surviving spouse".

that we determine for 1994 and 1995.[10]  See sec. 6013(d)(3).

We shall now turn to the determinations in the notice that remain at issue.  With respect to the claimed expenses that were deducted in Schedules F of the joint returns for 1994 and 1995, on the record before us, we find that petitioner has failed to establish that those claimed expenses (1) were paid during those years, except for expenses totaling $10,101.37 that we have found were paid during 1995;[11] (2) were paid for the purposes specified in those schedules, except for expenses totaling $10,101.37 that we have found were paid during 1995 for feed, veterinary care, horse supplies, and sawdust;[12] and (3) constitute ordinary and necessary business expenses under section 162(a).  On the instant record, we further find that petitioner has failed to show that the horse-training activities constitute an activity engaged in for profit within the meaning of section 183.

Based on our examination of the record in this case, we sustain, except to the extent stated below, respondent's determi-

---

[10]Petitioner does not contend that he is entitled to innocent spouse relief.

[11]Respondent concedes on brief that $5,306 was paid during 1995 with respect to the horse-training activities.  However, respondent's concession fails to take into account additional expenses totaling $4,795.37 with respect to the horse-training activities that documentary evidence prepared by respondent's revenue agent who testified at trial showed, and we have found, were paid during 1995.

[12]See supra note 11.

nations to disallow the deductions claimed in Schedules F of the 1994 and 1995 joint returns. The exception is that we hold that petitioner is entitled for 1995 to deduct from the income reported in Schedule F of the 1995 joint return a total of $10,101.37 paid for expenses relating to the horse-training activities.[13] See sec. 183(b)(2).

With respect to the claimed legal expenses that were deducted in Schedules C of the joint returns for 1994 and 1995, on the instant record, we find that petitioner has failed to establish that those claimed legal expenses (1) were paid during those years, (2) were paid for the purpose stated in those schedules, and (3) constitute ordinary and necessary business expenses under section 162(a). Accordingly, we sustain respondent's determinations to disallow those claimed deductions for the years at issue.

With respect to the $3,000 that Ms. Treadaway received during 1994 from the sale of the Brenda property which was not reported in the 1994 joint return, on the instant record, we find that petitioner has failed to show (1) that Ms. Treadaway had a basis in excess of zero in the Brenda property and (2) that that amount should not be included as capital gain for 1994. Consequently, we sustain respondent's determination to include $3,000

[13]Schedule F of the 1995 joint return reported income of $32,170 from the horse-training activities.

as capital gain for that year.

With respect to the net operating loss deductions claimed in the 1994 and 1995 joint returns, on the record before us, we find that petitioner has failed to show entitlement to those deductions. Accordingly, we sustain respondent's determinations to disallow those claimed deductions for the years at issue.

With respect to the respective Social Security benefits that Ms. Treadaway and petitioner received during 1994 and 1995, none of which was included in taxable income in the joint returns for those years, on the record before us, we sustain respondent's determinations to include in taxable income for the years at issue 85 percent of the respective Social Security benefits that Ms. Treadaway and petitioner received during those years. See sec. 86(a)(2)(B).

With respect to the accuracy-related penalty under section 6662(a) that respondent determined for each of the years at issue, respondent concedes on brief that that penalty should not be imposed on the portion of the underpayment for each of those years that is attributable to the failure to include in taxable income for each such year 85 percent of the respective Social Security benefits that Ms. Treadaway and petitioner received during each such year. In addition, we have held that petitioner is entitled for 1995 to deduct from the income reported in Schedule F of the 1995 joint return $10,101.37 of expenses that

we found were paid during that year with respect to the horse-training activities.  We further hold that the underpayment for 1995 for purposes of section 6662(a) must be reduced to reflect that holding.

On the record before us, we find that, except to the extent stated above, petitioner has failed to establish that he is not liable for the accuracy-related penalty under section 6662(a) for each of the years 1994 and 1995.  Accordingly, except to that extent, we sustain respondent's determinations that petitioner is liable for the accuracy-related penalty for each of those years.[14]

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing and the concessions of respondent,

Decision will be entered under Rule 155.

_____

[14]Because certain of our holdings increase self-employment income for each of the years at issue, correlative adjustments must be made to self-employment tax for each such year.  See supra note 5.