T.C. Memo. 2004-270

UNITED STATES TAX COURT

JOHN AND YOON JA BIAZAR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6424-01.          Filed November 29, 2004.

John Biazar, <u>pro se</u>.

<u>Patrick W. Lucas</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined the following deficiencies in, additions to, and penalties on petitioners' Federal income taxes:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalties Sec. 6662(a) |
|------|-----------|----------------------------------|------------------------|
| 1995 | $78,073 | $18,472 | $15,615 |
| 1996 | 55,863 | 13,053 | 11,173 |
| 1997 | 71,468 | 17,061 | 14,294 |
| 1998 | 41,628 | --- | 8,326 |

Unless otherwise indicated, all section references are to the Internal Revenue Code, and all Rule references are to the Tax Court Rules of Practice and Procedure. All figures are rounded to the nearest dollar.

After concessions,[1] the issues for decision are (1) whether petitioners are entitled to deduct expenses related to 97 Cents Market (minimart) in amounts greater than those determined by respondent for 1995, 1996, 1997, or 1998; (2) whether petitioners' gross receipts from the minimart should be increased for 1995 or decreased for 1995, 1996, 1997, or 1998; (3) whether petitioners are liable for an addition to tax pursuant to section 6651(a)(1) for 1995, 1996, and 1997; and (4) whether petitioners are liable for a penalty pursuant to section 6662(a) for 1995, 1996, 1997, and 1998.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are

---

[1] At trial, the parties stipulated or conceded most of the adjustments contained in the notice of deficiency. The remaining adjustments not addressed by this opinion are computational.

incorporated herein by this reference.  At the time they filed the petition, petitioners resided in Harbor City, California.

On Schedules C, Profit or Loss From Business, of their income tax returns for 1995, 1996, 1997, and 1998, petitioners reported gross receipts from the minimart of $413,145, $437,331, $509,512, and $487,614, respectively.  Petitioners signed their 1995 tax return on July 3, 1997, and respondent received their 1995 return on July 14, 1997.

Petitioners reported to the State Board of Equalization that their gross receipts from the minimart in 1995 were $419,509.

OPINION

I.  Burden of Proof:  Section 7491(a)

At the conclusion of the trial, petitioners raised for the first time the issue of the burden of proof shifting to respondent pursuant to section 7491(a).  Petitioners' case was set for trial five times, petitioners received five standing pretrial orders, and petitioners were warned on the record more than once about the consequences of failure to comply with the standing pretrial order.  Nonetheless, petitioners failed to comply with several aspects of the standing pretrial order, including failure to submit a trial memorandum.  Petitioners did not introduce credible evidence with respect to the factual issues relevant to ascertaining their liability.  See sec.

7491(a).  Accordingly, we conclude that pursuant to section 7491(a) the burden of proof does not shift to respondent.

## II.  Remaining Schedule C Expenses

Deductions are a matter of legislative grace, and petitioners have the burden of showing that they are entitled to any deduction claimed.  See Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  Petitioners presented no evidence regarding the minimart's expenses for 1995, 1996, 1997, or 1998 that were not stipulated or conceded by respondent.  Accordingly, we sustain respondent's determination regarding these amounts.

## III. Gross Receipts

Petitioners argue that the amounts of gross receipts listed on their 1995, 1996, 1997, and 1998 returns overstated their actual gross receipts because the amounts listed erroneously included loans[2] made to John Biazar (petitioner) that he deposited into the minimart's bank accounts.

Petitioner testified that he received the alleged loans as checks and repaid the alleged loans via check.  Other witnesses testified that they provided petitioner cash, and he provided them cash, not checks.

---

[2]  We use the term "loan" for convenience only.  We make no finding that the amounts third parties provided petitioner were in fact loans.  We note that one witness testified that no interest was charged on the alleged loans, and no loan agreements were ever executed.

The witnesses could not remember the exact amounts they provided petitioner or exactly when the alleged loans were made or repaid. One witness changed three times his story about how often he provided petitioner money. One witness testified that he provided petitioner approximately $40,000 per month during the years in issue. This amount alone (approximately $480,000 per year) would almost equal or exceed the total gross receipts reported during the years in issue.

Petitioner testified that Mr. Rothchild, petitioners' return preparer for 1995, 1996, 1997, and 1998, included in gross receipts the alleged loans petitioner deposited into the minimart's bank accounts. No evidence corroborated that petitioner deposited any of the alleged loans into the minimart's bank accounts. Meredith J. Polk, a C.P.A. later hired by petitioner for the audit and this case, testified that he did not know how Mr. Rothchild arrived at the gross receipts figures on the 1995, 1996, 1997, and 1998 returns.

The testimony of petitioner and other witnesses regarding the alleged loans was general, vague, conclusory, questionable, and contradictory in certain material respects. Under the circumstances presented here, we are not required to, and generally do not, rely on petitioner's testimony regarding the alleged loans to decide whether petitioners' gross receipts are less than the amounts reported on their tax returns. See Lerch

v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). There is no credible evidence (1) regarding the amounts of alleged loans received during the years in issue, (2) that petitioner ever deposited the alleged loans into the minimart's bank accounts, or (3) that the amounts of gross receipts listed on the 1995, 1996, 1997, and 1998 returns included the alleged loans.

We treat the gross receipts listed on petitioners' returns as admissions that petitioners had gross receipts of at least those amounts. See Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975). The evidence presented at trial is unpersuasive and insufficient to support lower gross receipts figures. Additionally, petitioners reported $6,364 more in gross receipts for 1995 to the State Board of Equalization than to the Internal Revenue Service. Respondent determined that petitioners' gross receipts should be increased by this amount for 1995. Accordingly, we sustain respondent's determination regarding petitioners' gross receipts for 1995.

IV.  Additions to Tax and Penalties

    A.    Burden of Production:  Section 7491(c)

    Section 7491(c) provides that the Commissioner will bear the burden of production with respect to the liability of any individual for additions to tax and penalties.  "The Commissioner's burden of production under section 7491(c) is to produce evidence that it is appropriate to impose the relevant penalty, addition to tax, or additional amount".  Swain v. Commissioner, 118 T.C. 358, 363 (2002); see also Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  If a taxpayer files a petition alleging some error in the determination of an addition to tax or penalty, the taxpayer's challenge will succeed unless the Commissioner produces evidence that the addition to tax or penalty is appropriate.  Swain v. Commissioner, supra at 363-365. The Commissioner, however, does not have the obligation to introduce evidence regarding reasonable cause or substantial authority.  Higbee v. Commissioner, supra at 446-447.  Section 7491(c) applies to examinations commenced after July 22, 1998.[3] Id. at 440.

---

[3]  As petitioners alleged in the petition that respondent's additions to tax and penalties determinations were in error, including the determination for their 1998 tax year, respondent cannot claim to be surprised that sec. 7491(c) would be in issue in this case.  See Swain v. Commissioner, 118 T.C. 358, 363-365 (2002); Hildebran v. Commissioner, T.C. Memo. 2004-42.

At trial, petitioners submitted a letter addressed to them from respondent that states:  "Your Federal income tax return for the year shown below has been selected for examination."  The tax year indicated is 1995.  The letter is signed by Revenue Agent Dwight Krstulja.  The typewritten date on the letter of "09-15-98" is crossed out and "11-03-98" is handwritten in.  The typewritten appointment date on the letter of "Friday, October 23, 1998" is crossed out and "Tuesday December 8, 1998" is handwritten in.  The letter continues:  "This is a field examination and will be conducted at your place of business or other convenient location."

Attached to this letter is an information document request (IDR).  The IDR bears a typewritten date of "09-15-98" and a handwritten date of "11-3-98".  The IDR also references the October 23, 1998, scheduled appointment.

Respondent contends the audit began before July 22, 1998. The Court kept the record open for 30 days after the trial for respondent to submit evidence as to when the audit of petitioners' returns began.  Respondent submitted a memorandum from "MACS Coordinator" to "Examiner" in the Southern California District and a tax module for petitioners.  The top of the tax module bears the following notation:  "Thu, 18 Dec 1997, 8:24 am."  Neither the tax module nor respondent explains what this

date means or how it indicates when the examination of petitioners' returns began for the years in issue.

The memorandum does not bear petitioners' names or Social Security numbers. The name of the examiner is not given. The exact date of the memorandum is unclear. The top of the memorandum lists "Rev 11/97" with no indication what "Rev" means. The facts of the memorandum are equally vague. The memorandum states: "The taxpayer operates a Schedule C business with gross receipts of over $200,000, and also claims Earned Income Credit." Petitioners reported gross receipts of more than $200,000 and claimed an earned income credit in 1995, 1996, and 1997; however, we note that the memorandum uses the singular "taxpayer" and the facts listed are not necessarily unique to petitioners. Additionally, the memorandum begins: "This case has been identified", suggesting that the case is being referred for an audit rather than that an audit already had begun.

We conclude that the letter sent to petitioners by Revenue Agent Krstulja and the IDR attached to it are more persuasive evidence of the date the examination in this case commenced. Accordingly, section 7491(c) applies to this case as the examination commenced after July 22, 1998. See Higbee v. Commissioner, supra.

B.   Section 6651(a)(1)

Respondent determined that petitioners are liable for an addition to tax pursuant to section 6651(a)(1) for 1995, 1996, and 1997.  Section 6651(a)(1) imposes an addition to tax for failure to file a return on the date prescribed (determined with regard to any extension of time for filing), unless such failure is due to reasonable cause and not due to willful neglect.

1.   1995

Petitioners signed their 1995 tax return on July 3, 1997, and respondent received their 1995 return on July 14, 1997. Accordingly, respondent met his burden of production for the section 6651(a)(1) addition to tax for 1995.  Petitioners have not established that their failure to timely file for 1995 was due to reasonable cause.  See Higbee v. Commissioner, supra at 446-447.  Accordingly, petitioners are liable for the section 6651(a)(1) addition to tax for 1995.

2.   1996 and 1997

Petitioners' 1996 and 1997 returns submitted to the Court bear no "received" stamp, and the date block is blank.  No other evidence was submitted regarding when these returns were filed. We conclude that respondent has failed to meet his burden of production for the section 6651(a)(1) addition to tax for 1996

and 1997.  Accordingly, petitioners are not liable for the section 6651(a)(1) addition to tax for 1996 and 1997.

C.    Section 6662

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations.  Sec. 6662(b).  Whether applied because of a substantial understatement of tax or negligence or disregard of rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the underpayment as to which the taxpayer acted with reasonable cause and in good faith.  Sec. 6664(c)(1).  The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances.  See sec. 1.6664-4(b)(1), Income Tax Regs.

Negligence includes any failure to make a reasonable attempt to comply with the Internal Revenue Code.  Sec. 6662(c). Respondent established that petitioners failed to maintain records as required by section 6001 and failed to substantiate items properly.  Sec. 1.6662-3(b)(1), Income Tax Regs. Accordingly, respondent met his burden of production for the section 6662 penalty for the years in issue.

Petitioners failed to establish that they had reasonable cause or acted in good faith in failing to maintain records for, and failing to substantiate, Schedule C expenses for the years in issue or for understating their gross receipts for 1995. Accordingly, petitioners are liable for the section 6662(a) penalty for 1995, 1996, 1997, and 1998.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.