T.C. Summary Opinion 2005-154

UNITED STATES TAX COURT

WENDY L. CHADWICK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4991-04S.                    Filed October 17, 2005.

<u>John W. Hart</u>, for petitioner.

<u>Timothy B. Heavner</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years in issue.

This case arises from a request for relief under section 6015 with respect to unpaid taxes reported on joint returns filed by petitioner and her former spouse for tax years 1995, 1997, and 1998. Respondent determined that petitioner was not entitled to any relief under section 6015. Petitioner timely filed a petition seeking review of respondent's determination.

The issue for decision is whether petitioner is entitled to relief from joint and several liability for the taxable years 1995, 1997, and 1998, pursuant to section 6015.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Ahoskie, North Carolina, on the date the petition was filed in this case.

Petitioner and her former spouse, David A. Tillotson (Mr. Tillotson), were married on April 29, 1990. During 1995, 1997, and 1998, the years in issue, petitioner was married to Mr. Tillotson.

During 1995, petitioner was employed by JCPenney Life Insurance and Graphic Products, Inc. During 1995, Mr. Tillotson was employed by Draperies and More, Inc. JCPenney Life Insurance prepared a 1995 Form W-2, Wage and Tax Statement, for petitioner indicating wage income of $5,525.90 and Federal income tax

withheld of $7.06. Graphic Products, Inc. prepared a 1995 Form W-2 for petitioner indicating wage income of $20,282.89 and Federal income tax withheld of $1,745.49. Draperies and More, Inc. prepared a 1995 Form W-2 for Mr. Tillotson indicating wage income of $8,343.27 and Federal income tax withheld of $243.

Petitioner and Mr. Tillotson timely filed with the Internal Revenue Service a joint Form 1040, U.S. Individual Income Tax Return, for taxable year 1995. On their jointly filed Form 1040, petitioner and Mr. Tillotson reported: (1) Wage income of $34,152; (2) taxable interest income of $21; (3) taxable income of $22,623; (4) Federal income tax withheld of $1,995; and (5) an amount owed of $1,399. Petitioner and Mr. Tillotson did not satisfy the underpayment when they filed their joint 1995 Federal income tax return.

During 1997, petitioner was employed by JCPenney Life Insurance and ODESCO. During 1997, Mr. Tillotson was employed by Intellect Network Technologies for part of the year. Mr. Tillotson was also self-employed during 1997. JCPenney Life Insurance prepared a 1997 Form W-2 for petitioner indicating wage income of $9,434.92 and Federal income tax withheld of $584.83. ODESCO prepared a 1997 Form W-2 for petitioner indicating wage income of $1,283 and Federal income tax withheld of $118.01. Intellect Network Technologies prepared a 1997 Form W-2 for Mr.

Tillotson indicating wage income of $884.54 and Federal income tax withheld of $39.92.

Petitioner and Mr. Tillotson timely filed with the Internal Revenue Service a joint Form 1040 for taxable year 1997. On their jointly filed Form 1040, petitioner and Mr. Tillotson reported: (1) Wage income of $11,603, (2) business income of $8,306, (3) pension and annuity income of $192, (4) taxable income of $7,134, (5) self-employment tax of $1,173, (6) Federal income tax withheld of $743, and (7) an amount owed of $1,548. Petitioner and Mr. Tillotson attached a Schedule C, Profit or Loss From Business, to their jointly filed 1997 Federal income tax return. On the Schedule C, Mr. Tillotson was identified as the proprietor of a business named "Contract Installations". Petitioner and Mr. Tillotson did not satisfy the underpayment when they filed their joint 1997 Federal income tax return.

During 1998, petitioner was employed by ODESCO, Blair Graphics, Inc., and Wyatt & Associates. During 1998, Mr. Tillotson was self-employed. ODESCO prepared a 1998 Form W-2 for petitioner indicating wage income of $72 and no Federal income tax withheld. Blair Graphics, Inc. prepared a 1998 Form W-2 for petitioner indicating wage income of $4,994.10 and Federal income tax withheld of $477.75. Wyatt & Associates prepared a 1998 Form W-2 for petitioner indicating wage income of $12,986.38 and Federal income tax withheld of $1,262.68.

Petitioner and Mr. Tillotson timely filed with the Internal Revenue Service a joint Form 1040 for taxable year 1998. On their jointly filed Form 1040, petitioner and Mr. Tillotson reported: (1) Wage income of $18,052, (2) business income of $6,059, (3)taxable income of $11,183, (5) self-employment tax of $856, (6) Federal income tax withheld of $1,741, and (7) an amount owed of $791. Petitioner and Mr. Tillotson attached a Schedule C to their jointly filed 1998 Federal income tax return. On the Schedule C, Mr. Tillotson was identified as the proprietor of the business, "Contract Installations". Petitioner and Mr. Tillotson did not satisfy the underpayment when they filed their joint 1998 Federal income tax return.

Petitioner and Mr. Tillotson were divorced on November 27, 2000, by a divorce decree entered by the District Court of Hunt County, Texas. The divorce decree states, in pertinent part:

> IT IS ORDERED AND DECREED that DAVID ALLEN TILLOTSON and WENDY LANETTE TILLOTSON shall be equally responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 1998, and each party shall timely pay 50 percent of any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50 percent of such liabilities unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions. In such case, the portion of the tax, penalty, and/or interest relating to the omitted income of claims of erroneous deductions shall be paid by the party who earned the omitted income or proffered the claim for an erroneous deduction. The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.

On August 6, 2001, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief.  Attached to the Form 8857 was a letter dated July 21, 2001.  In the letter petitioner states:

> I was not aware of the outstanding monies owing until after my separation and right before my divorce from David A. Tillotson, which was final on November 22, 2000.
>
> After reviewing my records, I believe the monies owed for the years 1995, 1997, and 1998 were due to my ex-husband's, David A. Tillotson, unemployment and/or self-employment.  I maintained a full-time job in which taxes were taken out through my employer.  Therefore, I do not feel I am responsible for the taxes owed.
>
> David A. Tillotson was solely responsible for the paying of these taxes, as he was [responsible for] all of the household bills.  I was not aware that he had not been paying them.  Due to the fact that he was home more than I, he would always retrieve the mail before I had the opportunity to do so.  Therefore, if there was correspondence between you and my household, I had no knowledge of it.

By letter dated August 15, 2001, respondent's examiner requested that petitioner complete and submit:  (1) A statement explaining why she believed she qualified for relief; and (2) Form 886-A, Innocent Spouse Questionnaire.

By letter dated September 8, 2001, petitioner submitted a statement explaining why she believed that she qualified for relief and she attached to the letter a completed Form 886-A. Petitioner stated in her letter, in pertinent part:

> I believe I would qualify for relief for the following reasons.  I was unaware that they [the 1995, 1997, and 1998 reported tax liabilities] had not been paid.  I was not responsible for any of the bill paying during my entire

marriage to David Tillotson.  I did not get or open any of the mail; therefore I was not aware if [sic] any correspondence between the IRS and my household.  The only thing I have to show me why there are taxes due are printouts that the IRS sent me and by looking at them it shows that David Tillotson had unemployment and self employment.  I paid my taxes through my employer and feel that David should be responsible for the taxes that are due for this year [sic].

To give you a background of my situation, I was married to David Tillotson in 1990 and divorced in 2000.  I do not have any records in my possession.  They are ALL in the possession of David.  At the time I left I was only able to take my clothes and a few personal items.  As stated above, he was responsible for paying any and all of the bills.  I was not included or involved in paying any of the bills at all.  I supplied him with my paycheck and put my trust in him, as my husband, to take care [sic] them.  If I knew what I know now, I would have never filed a joint return.

By letter dated April 26, 2002, respondent denied petitioner's request for relief.  On May 17, 2002, petitioner submitted a Form 12509, Statement of Disagreement, to respondent appealing respondent's denial of relief under section 6015.  Petitioner stated on Form 12509:

I, Wendy Chadwick, disagree with the Internal Revenue Service determination because I feel I am not responsible for the taxes owed at this time.  Please review the attached letters with attached documents which were sent to the IRS previously.

As you see I was not aware that payments were not being made until after the separation.  I had no knowledge that the monies owed at the time of filing were not being paid as David kept this information from me.  David was solely responsible for paying all household bills.  As most people that are married, you trust that the other is taking care of things when they say they are.  I promise you I would have made sure the taxes were paid if I knew they were there.

In response the [sic] the denial letter I received, I did not feel I needed to adjust my withholdings because I

was not aware that David wasn't paying the taxes due after filing the return.

By letter dated September 26, 2002, respondent acknowledged receipt of petitioner's request for an appeal. By letter dated January 29, 2003, respondent's Appeals Office acknowledged receipt of petitioner's case for consideration. In a letter dated March 26, 2003, respondent's Appeals officer assigned to consider petitioner's request acknowledged assignment of the case and her intent to schedule a conference with petitioner.

Respondent's Appeals officer, by letter dated March 27, 2002, attempted to contact petitioner's former spouse, Mr. Tillotson, to inform him of respondent's initial determination and to determine whether he had additional information to provide for consideration in his former spouse's case. In a letter dated August 11, 2003, respondent's Appeals officer requested additional information from petitioner regarding her claim for relief.

On August 28, 2003, respondent received from petitioner a copy of the letter previously sent to her on August 11, 2003, with her responses to the request for additional information attached. Petitioner's responses, in pertinent part, are as follows:

    1.  List your current monthly income:
        Response - $1,352.59 monthly

2. List your monthly expenses:
   Response - Mortgage: None
                     Rent: $250
                     Utilities: $200 (Average)
                     Food: $100
                     Clothing: $100
                     Vehicle expense: $525
                     All other expenses: $45 (IRS)
                     TOTAL EXPENSES: $1,220 per month

3. List all people currently residing in your household:
   Response - Mark Burge, roommate

4. Are you currently renting or buying your residence?
   Response - Renting (roommates)

5. Explain why you feel paying these taxes would cause you an economic hardship.
   Response - I am having a hard time making ends meet now.

By letter dated September 8, 2004, respondent's Appeals officer scheduled an Appeals conference with petitioner to be held by telephone on September 23, 2003. Respondent's Appeals officer made unsuccessful attempts to contact petitioner by telephone on September 23, 2003.

By facsimile dated October 20, 2003, petitioner submitted a letter and additional information to respondent's Appeals officer for consideration. Petitioner's letter stated:

> Following is some information to consider for my innocent spouse claim. I have created a breakdown showing earnings and deductions for my ex-husband, David Tillotson and myself by using information I have in my files. Also attached for your review is a copy of the Collection Information Statement that I completed for the Offer in Compromise request I am sending in today.
>
> I hope that you will review this information and see that I have paid my share of taxes through my employer. The taxes owning [sic] for the above-referenced years [1995, 1997, and 1998] were due to David's unemployment and/or

self-employment, therefore I do not feel it is fair and just for me to pay them.  As you can see, it would cause me great hardship to pay all of this amount owing, but that is why I am sending in the Offer in Compromise.

I would also like to point out that I have been making payments of $45.00 per month since I believe July of 2001 without any tardiness.  If I would have known that Mr. Tillotson was not paying the debt, I would have made sure it was paid when it was due instead of waiting until now to clear this up.  He had a tendency to hide things from me and spend money on other things instead of bills.

By letter dated November 10, 2003, respondent's Appeals officer sent to petitioner a notice of her determination that petitioner was not entitled to relief under section 6015(f) for the following amounts of unpaid tax liabilities, including interest, for taxable years 1995, 1997, and 1998:  $2,860, $2,568, and $1,299, respectively.  Respondent's Appeals officer issued to petitioner a Notice of Determination Concerning Your Request for Relief under the Equitable Relief Provision of Section 6015(f) on December 19, 2003, denying relief under section 6015(f) for the taxable years 1995, 1997, and 1998.

On March 18, 2004, petitioner filed a petition with this Court for review of respondent's determination denying her request for relief from joint and several liability with respect to the 1995, 1997, and 1998 tax years.

## Discussion

In general, taxpayers filing a joint Federal income tax return are each responsible for the accuracy of their return and are jointly and severally liable for the entire tax liability due

for that year. Sec. 6013(d)(3); <u>Butler v. Commissioner</u>, 114 T.C. 276, 282 (2000). In certain circumstances, however, a spouse may obtain relief from joint and several liability by satisfying the requirements of section 6015.

Section 6015 applies to tax liabilities arising after July 22, 1998, and to tax liabilities arising on or before July 22, 1998, that remain unpaid as of such date. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3201(g), 112 Stat. 740. In the present case, petitioner and Mr. Tillotson's tax liabilities arose during taxable years 1995, 1997, and 1998. However, these liabilities remained unpaid as of July 22, 1998; therefore, section 6015 applies to the case at bar. See <u>Washington v. Commissioner</u>, 120 T.C. 137, 155 (2003).

Section 6015(a)(1) provides that a spouse who has made a joint return may elect to seek relief from joint and several liability under section 6015(b) (dealing with relief from liability for an understatement of tax on a joint return). Section 6015(a)(2) provides that a spouse who is eligible to do so may elect to limit that spouse's liability for any deficiency with respect to a joint return under section 6015(c). Relief from joint and several liability under section 6015(b) or (c) is available only with respect to a deficiency for the year for which relief is sought. Sec. 6015(b)(1)(D) and (c)(1); see H. Conf. Rept. 105-599, at 252-254 (1998), 1998-3 C.B. 747, 1006-

1008.  If relief is not available under either section 6015(b) or (c), an individual may seek equitable relief under section 6015(f), which may be granted by the Commissioner in his discretion.

In this case, petitioner contends that she is entitled to full relief from liability under section 6015.  Our jurisdiction to review petitioner's request for relief is conferred by section 6015(e), which allows a spouse who has requested relief from joint and several liability to contest the Commissioner's denial of relief by filing a timely petition in this Court.  We address petitioner's request for relief under subsections (b), (c), and (f) of section 6015 in turn.

A.  Section 6015(b)

Section 6015(b) provides a spouse relief from joint liability for an "understatement" (as defined in section 6662(d)(2)(A)) of tax attributable to erroneous items of the other spouse.[1]  With regard to the present case, petitioner does not seek relief from an understatement of tax but rather from the tax liabilities reported as due on the 1995, 1997, and 1998 returns that were not paid when the returns were filed.  Because there is no understatement of tax for 1995, 1997, and 1998, relief is not available to petitioner under section 6015(b).  See

---

[1]Sec. 6662(d)(2)(A) defines an understatement as the excess of the amount of tax required to be shown on the return over the tax imposed which is shown on the return, reduced by any rebate.

<u>Washington v. Commissioner</u>, <u>supra</u> at 146-147; see also <u>Hopkins v. Commissioner</u>, 121 T.C. 73, 88 (2003).

B.  <u>Section 6015(c)</u>

Section 6015(c) provides relief from joint liability for spouses who filed a joint return if they are no longer married, are legally separated, or have lived apart for a 12-month period. Such spouses may elect to be treated, for purposes of determining tax liability, as if separate returns had been filed. Section 6015(c)(1) provides proportionate relief for any "deficiency which is assessed with respect to the return". Relief is not available under section 6015(c) with respect to an unpaid liability for tax reported on the return. As noted, in the present case, petitioner is seeking relief of the unpaid tax liabilities reported as due on the 1995, 1997, and 1998 joint returns. Because there is no "deficiency" for 1995, 1997, and 1998, relief is not available to petitioner under section 6015(c). See <u>Washington v. Commissioner</u>, <u>supra</u>; see also <u>Hopkins v. Commissioner</u>, <u>supra</u>.

C.  <u>Section 6015(f)</u>

Therefore, the only remaining opportunity for relief available to petitioner is section 6015(f). Section 6015(f) provides as follows:

SEC. 6015(f).  Equitable Relief.--Under procedures prescribed by the Secretary, if--

(1) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either); and

(2) relief is not available to such individual under subsection (b) or (c),

the Secretary may relieve such individual of such liability.

As directed by section 6015(f), the Commissioner has prescribed guidelines in Rev. Proc. 2000-15, 2000-1 C.B. 447,[2] to be considered in determining whether an individual qualifies for relief under section 6015(f).  Rev. Proc. 2000-15, sec. 4.01, 2000-1 C.B. at 448, lists threshold conditions which must be satisfied before the Commissioner will consider a request for relief under section 6015(f).  Respondent concedes that petitioner meets these threshold conditions for equitable innocent spouse relief.

Rev. Proc. 2000-15, sec. 4.03, 2000-1 C.B. at 448-449, lists nonexclusive factors that the Commissioner will consider in determining whether, taking into account all the facts and circumstances, it is inequitable to hold the requesting spouse liable for all or part of the unpaid income tax liability

---

[2]This revenue procedure was superseded by Rev. Proc. 2003-61, 2003-2 C.B. 296.  Rev. Proc. 2003-61, supra, is effective either for requests for relief filed on or after Nov. 1, 2003, or for requests for which no preliminary determination letter was issued as of Nov. 1, 2003.  In the present case, the request for relief was filed on Aug. 6, 2001, and the preliminary determination letter was issued on Apr. 26, 2002; therefore, Rev. Proc. 2000-15, 2000-1 C.B. 447 is applicable in the present situation.

or deficiency, and full or partial equitable relief under section 6015(f) should be granted.  Rev. Proc. 2000-15, sec. 4.03(1), 2000-1 C.B. at 448-449, provides that the following factors weigh in favor of the Commissioner's granting equitable relief:  (1) Marital status, (2) economic hardship, (3) abuse, (4) no knowledge or reason to know, (5) nonrequesting spouse's legal obligation, and (6) attributable to nonrequesting spouse.  Rev. Proc. 2000-15, sec. 4.03(2), 2000-1 C.B. at 449, provides that the following factors weigh against the Commissioner's granting equitable relief:  (1) Attributable to requesting spouse, (2) knowledge, or reason to know, (3) significant benefit, (4) lack of economic hardship, (5) noncompliance with Federal income tax laws, and (6) requesting spouse's legal obligation.  Further, Rev. Proc. 2000-15, supra, provides that no single factor will be determinative, but that all relevant factors, regardless of whether the factor is listed in Rev. Proc. 2000-15, sec. 4.03, will be considered and weighed.

To prevail under section 6015(f), petitioner must show that respondent's denial of equitable relief from joint liability under section 6015(f) was an abuse of discretion.  See Washington v. Commissioner, 120 T.C. at 146; Jonson v. Commissioner, 118 T.C. 106, 125 (2002) (citing Butler v. Commissioner, 114 T.C. 276, 292 (2000)), affd. 353 F.3d 1181 (10th Cir. 2003).  Action constitutes an abuse of discretion under this standard where it

is arbitrary, capricious, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999). The question of whether respondent's determination was arbitrary, capricious, or without sound basis in fact is a question of fact. Cheshire v. Commissioner, 115 T.C. 183, 198 (2000), affd. 282 F.3d 326 (5th Cir. 2002). In deciding whether respondent's determination that petitioner is not entitled to relief under section 6015(f) was an abuse of discretion, we consider evidence relating to all the facts and circumstances.

Respondent contends that his denial of petitioner's request for equitable relief from joint liability under section 6015(f) was not an abuse of discretion. We now address each of the factors of Rev. Proc. 2000-15, sec. 4.03, separately.

1. Marital Status

During 1995, 1997, and 1998, petitioner and Mr. Tillotson were married and resided in the same household. Petitioner and Mr. Tillotson were divorced on November 27, 2000. This factor weighs in favor of granting relief to petitioner.

2. Economic Hardship

Respondent contends that petitioner offered no evidence that she would suffer economic hardship if relief were denied. Pursuant to section 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., economic hardship exists if a levy will cause a taxpayer to be unable to pay his/her reasonable basic living expenses.

Respondent maintains that respondent's collection activity would not leave petitioner unable to pay her basic living expenses.[3]  In addition, respondent asserts that petitioner provided no documentation to contradict these contentions or to demonstrate an economic hardship.

---

[3]Sec. 301.6343-1(b)(4)(ii), Proced. & Admin. Regs., provides:

(ii) Information from taxpayer.  In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--

(A)  The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B)  The amount reasonably necessary for food, clothing, housing, (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(C)  The cost of living in the geographic area in which the taxpayer resides;

(D)  The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E)  Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F)  Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

During the appeals process, petitioner reported that her monthly income was $1,352.59, and she reported that her monthly expenses totaled $1,220.

It appears from the record that petitioner earns sufficient income such that she would not experience economic hardship if required to pay some or all of the tax deficiencies at issue in the present case. Petitioner has not presented any documentation or testimony to contradict the above claims or the determination of respondent; therefore, we find that petitioner will not suffer economic hardship if relief is not granted. This factor favors denying relief.

3. Abuse

At trial, petitioner testified that she was physically and verbally abused by Mr. Tillotson during their marriage. Petitioner did not present any documentation to substantiate such a claim, other than her testimony. However, we find petitioner's testimony, on this issue, to be credible and find that petitioner was abused by Mr. Tillotson during their marriage. Spousal abuse is a factor listed in Rev. Proc. 2000-15, sec. 4.03(1), that will weigh in favor of equitable relief, if found, but will not weigh against equitable relief if not present in a case. Therefore, this factor favors granting relief.

4. Knowledge or Reason To Know

In the case of an income tax liability that arose from failure to pay a reported liability, the fact that the requesting spouse did not know and had no reason to know that the reported liability would be unpaid at the time the return was signed is a factor in favor of granting relief. Rev. Proc. 2000-15, sec. 4.03(1)(d). By contrast, the fact that the requesting spouse knew or had reason to know that the reported liability would be unpaid at the time the return was signed is a factor weighing against relief. Rev. Proc. 2000-15, sec. 4.03(2)(b).

Petitioner contends that she did not know and had no reason to know that Mr. Tillotson did not satisfy the reported liabilities on their joint tax returns for taxable years 1995, 1997, and 1998.

As previously stated, petitioner submitted to respondent a Form 8857, Request for Innocent Spouse Relief. Attached to the Form 8857 was a letter dated July 21, 2001. In the letter petitioner states:

> I was not aware of the outstanding monies owing until after my separation and right before my divorce from David A. Tillotson, which was final on November 22, 2000.
>
> After reviewing my records, I believe the monies owed for the years 1995, 1997, and 1998 were due to my ex-husband's, David A. Tillotson, unemployment and/or self-employment. I maintained a full-time job in which taxes were taken out through my employer. Therefore, I do not feel I am responsible for the taxes owed.

- 20 -

David A. Tillotson was solely responsible for the paying of these taxes, as he was [responsible for] all of the household bills. I was not aware that he had not been paying them. Due to the fact that he was home more than I, he would always retrieve the mail before I had the opportunity to do so. Therefore, if there was correspondence between you and my household, I had no knowledge of it.

The record shows that petitioner voluntarily signed the 1995, 1997, and 1998 joint returns. Petitioner testified, at trial, that she did not review the joint returns before filing. Petitioner further testified that she and Mr. Tillotson did not have a joint bank account and that when she received a paycheck she would negotiate the paycheck and give the cash to Mr. Tillotson. Additionally, petitioner testified that she assumed the liabilities reported on the joint tax returns were paid by Mr. Tillotson and that she had no reason of knowing that such liabilities were not paid.

It should be noted that the majority of the income tax liability for taxable year 1995 was a result of petitioner's wage income. Also, petitioner has not offered any documentary evidence supporting her testimony that she did not know or had no reason to know that the reported liabilities would be unpaid at the time the return was signed. It is well settled that we are not required to accept self-serving testimony in the absence of corroborating evidence. Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992). Upon the basis of the

record in the case at bar, we find petitioner knew or had reason to know that the reported liability would be unpaid at the time the return was signed.  This factor favors denying relief to petitioner.

5.  <u>Nonrequesting Spouse's Legal Obligation</u>

As previously noted, petitioner and Mr. Tillotson were divorced on November 27, 2000, by a divorce decree entered by the District Court of Hunt County, Texas.  The divorce decree states, in pertinent part:

> IT IS ORDERED AND DECREED that DAVID ALLEN TILLOTSON and WENDY LANETTE TILLOTSON shall be equally responsible for all federal income tax liabilities of the parties from the date of marriage through December 31, 1998, and each party shall timely pay 50 percent of any deficiencies, assessments, penalties, or interest due thereon and shall indemnify and hold the other party and his or her property harmless from 50 percent of such liabilities unless such additional tax, penalty, and/or interest resulted from a party's omission of taxable income or claim of erroneous deductions.  In such case, the portion of the tax, penalty, and/or interest relating to the omitted income of claims of erroneous deductions shall be paid by the party who earned the omitted income or proffered the claim for an erroneous deduction.  The parties agree that nothing contained herein shall be construed as or is intended as a waiver of any rights that a party has under the "Innocent Spouse" provisions of the Internal Revenue Code.

Rev. Proc. 2000-15, sec. 4.03(1)(e), indicates that if Mr. Tillotson had a legal obligation under the divorce decree to pay the tax liabilities, then that fact would weigh in favor of granting relief to petitioner.  Likewise, if the divorce decree placed the obligation to pay the taxes on petitioner, then that fact would weigh against granting relief to her as indicated in

Rev. Proc. 2000-15, sec. 4.03(2)(f). In the present case where the divorce decree holds each party equally responsible for all Federal income tax liabilities of the parties from the date of marriage through December 31, 1998, this factor is considered neutral.

6. Attributable to Nonrequesting Spouse

As previously stated, the majority of the income tax liability for taxable year 1995 was a result of petitioner's wage income. However, the income tax liabilities of $1,509.92 and $822.64 for taxable years 1997 and 1998, respectively, are attributable to Mr. Tillotson's self employment and his failure to pay any estimated taxes. As to the income tax liabilities of $1,509.92 and $822.64 for taxable years 1997 and 1998, respectively, this factor favors granting petitioner equitable relief.

7. Significant Benefit

Respondent contends that petitioner received benefits from the proceeds of Mr. Tillotson's self-employment in the form of payment of joint household expenses and living expenses.

Petitioner testified at trial that Mr. Tillotson would pay household and living expenses with both his paychecks and her paychecks. Petitioner also testified at trial that Mr. Tillotson was responsible for paying the bills. Rev. Proc. 2000-15, sec. 4.03(2)(c), states that "The requesting spouse has significantly

benefitted (beyond normal support) from the unpaid liability or items giving rise to the deficiency."  Due to the use of Mr. Tillotson's income to pay household and living expenses during taxable years 1995, 1997, and 1998, we find that petitioner did not benefit "beyond normal support" from the income which led to the income tax liabilities for taxable years 1995, 1997, and 1998.  Therefore, this factor is a neutral factor.

8.  Noncompliance With Federal Income Tax Laws

There is no evidence in the record as to this factor. Therefore, we consider this factor neutral.

### Conclusion

The factors that weigh against granting relief to petitioner outweigh those factors favoring relief.  Therefore, under these facts and circumstances, we hold that respondent did not abuse his discretion in denying equitable relief to petitioner under section 6015(f).

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered

for respondent.