T.C. Memo. 2008-92

UNITED STATES TAX COURT

CHUKWUMA I. ODELUGO, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13408-04.                     Filed April 10, 2008.

G. Emeka Obinna Onwezi, for petitioner.

Paul T. Butler, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:[1]  Respondent determined the following defi-

ciencies in, and additions to, petitioner's Federal income tax

---

[1]Special Trial Judge Carleton D. Powell conducted the trial
in this case.  He died after the case was submitted.  The parties
have declined the opportunity for a new trial or for supplementa-
tion of the record and have expressly consented to the reassign-
ment of this case for opinion and decision based on the record of
the trial held in this case.

(tax):

| Year | Deficiency | Additions to Tax | | |
|------|-----------|------------------|---------------|-------------|
| | | Sec. 6651(a)(1)[2] | Sec. 6651(a)(2) | Sec. 6654(a) |
| 1998 | $30,228.40 | $6,173.19 | * | $1,371.98 |
| 1999 | 20,760.00 | 4,671.00 | * | 996.98 |

*Amount to be determined at a later date pursuant to sec. 6651(a)(2) and (c).

In the answer, respondent alleged certain increases in the deficiencies and the additions to tax under sections 6651(a)(1) and (2) and 6654(a) for petitioner's respective taxable years 1998 and 1999 that respondent had determined in the notices of deficiency with respect to those respective years (notices).

The issues remaining for decision are:

(1) Does petitioner have unreported income for each of his taxable years 1998 and 1999 in excess of the amount determined in the notice of deficiency with respect to each of those years?  We hold that he does not.

(2) Is petitioner entitled for each of his taxable years 1998 and 1999 to deduct certain expenses that petitioner claims with respect to his law practice?  We hold that he is not.

(3) Is petitioner liable for each of his taxable years 1998 and 1999 for the addition to tax under section 6651(a)(1)?  We hold that he is to the extent stated herein.

_____

[2]All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

(4) Is petitioner liable for each of his taxable years 1998 and 1999 for the addition to tax under section 6651(a)(2)? We hold that he is to the extent stated herein.

(5) Is petitioner liable for each of his taxable years 1998 and 1999 for the addition to tax under section 6654? We hold that he is to the extent stated herein.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioner's address shown in the petition in this case was in Baltimore, Maryland.

At an undisclosed time before 1998, the Internal Revenue Service employed petitioner in an undisclosed capacity. At all relevant times, including during 1998 and 1999, the years at issue, petitioner was licensed to practice law in Maryland and in the District of Columbia. On an undisclosed date, petitioner was admitted to practice before the United States Tax Court.

During 1998 and 1999, petitioner resided at 1516 U Street, NW, Washington, D.C. The property located at that address (U Street property) consisted of three floors.

During 1998 and 1999, petitioner, who practiced law as a sole practitioner, represented various clients, at least some of whom were assigned to him under the Criminal Justice Act (CJA).[3]

_____

[3]The Court takes judicial notice that Congress codified the CJA in 18 U.S.C. sec. 3006A (1994).

Starting on an undisclosed date in August 1999 through at least the end of that year, petitioner employed Anitha Johnson (Ms. Johnson) as a paralegal and office manager. Ms. Johnson continued to work for petitioner in an undisclosed capacity at least through 2004. By Ms. Johnson's own admission, she did not perform well the administrative tasks that she was expected to undertake as part of her employment by petitioner. Throughout her employment, neither petitioner nor Ms. Johnson maintained adequate records (e.g., receipts, invoices, billing statements) with respect to petitioner's law practice.

During 1998, petitioner received (1) nonemployee compensation of $44,424 from the General Services Administration KC Federal Building Fund (GSA) and $29,415 from the District of Columbia and (2) an early distribution of $13,964 from the National Finance Center Thrift Savings Plan. During that year, petitioner also earned interest of $265 with respect to the checking and savings accounts (petitioner's IRFCU checking and savings accounts) that he maintained at the Internal Revenue Federal Credit Union (IRFCU).

During 1998, petitioner made deposits totaling $42,145 into a checking account (petitioner's Chevy Chase checking account) that he maintained at Chevy Chase Bank.[4] During that year,

---

[4]We shall sometimes refer collectively to petitioner's Chevy Chase checking account and petitioner's IRFCU checking and
(continued...)

petitioner also made deposits totaling $124,513 into petitioner's IRFCU checking and savings accounts, of which at least $10,463.68[5] was made by direct deposit from GSA.

During 1999, petitioner received nonemployee compensation of $64,944 from GSA. During that year, petitioner earned interest of $39 with respect to petitioner's IRFCU checking and savings accounts.

During 1999, petitioner made deposits totaling $35,195 into petitioner's Chevy Chase checking account. During that year, petitioner also made deposits totaling $71,556 into petitioner's IRFCU checking and savings accounts, of which at least $64,944.23[6] was made by direct deposit from GSA.

Around August 21, 1998, petitioner filed a tax return (return) for his taxable year 1997 that showed tax due of $20,084

---

[4](...continued)
savings accounts as petitioner's bank accounts.

[5]For convenience, we shall round up to the nearest dollar the $10,463.68 of direct deposits that GSA made into petitioner's IRFCU checking account during 1998.

[6]The total amount of direct deposits that GSA made into petitioner's IRFCU checking account during 1999 rounded down to the nearest dollar equals the amount of nonemployee compensation from GSA that, as discussed below, was shown in the substitute for return that respondent prepared for petitioner's taxable year 1999 and the notice of deficiency that respondent issued to petitioner with respect to that year. We presume that respondent rounded down to the nearest dollar the $64,944.23 of nonemployee compensation that petitioner received from GSA during 1999. For convenience, we shall round down to the nearest dollar that total amount of direct deposits.

and that the Internal Revenue Service accepted as filed. Petitioner did not file a return for his taxable year 1998 or his taxable year 1999. Nor did he make any estimated tax payments with respect to either of those two years.

Respondent prepared substitutes for return for petitioner's respective taxable years 1998 (substitute for return for 1998) and 1999 (substitute for return for 1999). Each of those substitutes for return consisted of the following documents: (1) IRC Section 6020(b) Certification (section 6020(b) certification), (2) Form 1040, U.S. Individual Income Tax Return, for the taxable year for which respondent prepared that substitute, (3) a transcript of petitioner's account for that year, (4) Form 4549, Income Tax Examination Changes, and (5) Form 886-A, Explanation of Items. Each section 6020(b) certification certified that the pages attached thereto constituted a valid substitute for return under section 6020(b). The substitute for return for 1998 showed, inter alia, (1) nonemployee compensation of $73,839 consisting of $44,424 from GSA and $29,415 from the District of Columbia, (2) interest of $265, (3) a taxable distribution from the National Finance Center Thrift Savings Plan of $13,964, and (4) total tax of $30,228.40. The substitute for return for 1999 showed, inter alia, (1) nonemployee compensation of $64,944 from GSA, (2) interest of $39, and (3) total tax of $20,760.

Respondent issued to petitioner separate notices with respect to his taxable years 1998 (notice for 1998) and 1999 (notice for 1999). In the notice for 1998, respondent determined, inter alia, that petitioner has (1) nonemployee compensation of $73,839,[7] (2) interest of $265, and (3) a taxable distribution from the National Finance Center Thrift Savings Plan of $13,964. In that notice, respondent also determined that petitioner is liable for additions to tax under sections 6651(a)(1) and (2) and 6654(a) of $6,173.19, an amount to be computed at a later date, and $1,371.98, respectively.

In the notice for 1999, respondent determined, inter alia, that petitioner has nonemployee compensation of $64,944[8] and interest of $39. In that notice, respondent also determined that petitioner is liable for additions to tax under sections 6651(a)(1) and (2) and 6654(a) of $4,671, an amount to be computed at a later date, and $996.98, respectively.

_____

[7]The $73,839 of nonemployee compensation that respondent determined in the notice for 1998 was based upon the nonemployee compensation shown in the substitute for return for 1998. As discussed above, of that total amount of nonemployee compensation for 1998, $44,424 was from GSA and $29,415 was from the District of Columbia.

[8]The $64,944 of nonemployee compensation that respondent determined in the notice for 1999 was based upon the nonemployee compensation shown in the substitute for return for 1999. As discussed above, the entire amount of that nonemployee compensation for 1999 was from GSA.

In the answer, respondent alleged that respondent conducted a deposit analysis and reconciliation of petitioner's bank accounts for each of petitioner's taxable years 1998 (1998 bank deposits analysis) and 1999 (1999 bank deposits analysis). In the answer, respondent further alleged (1) that the 1998 bank deposits analysis showed that during 1998 petitioner made total deposits of at least $166,658 into petitioner's bank accounts, of which $136,362 is taxable income,[9] and (2) that the 1999 bank deposits analysis showed that during 1999 petitioner made total deposits of at least $106,751 into those accounts, of which $101,179 is taxable income.[10] Respondent did not allege in the answer that respondent reduced the total deposits that respondent alleged for petitioner's respective taxable years 1998 and 1999 by the amounts of total unreported income that respondent had determined in the respective notices and that respondent should have reasonably known had been deposited into petitioner's bank accounts during those respective years. Nor did respondent allege in the answer that respondent reduced the amounts of total unreported income that respondent alleged in the answer for petitioner's respective taxable years 1998 and 1999 by any

_____

[9]In effect, respondent alleged in the answer that for 1998 $30,296 of petitioner's total deposits during that year are not taxable.

[10]In effect, respondent alleged in the answer that for 1999 $5,572 of petitioner's total deposits during that year are not taxable.

portion of the amounts of unreported income that respondent had determined in the respective notices. In the answer, respondent also alleged that petitioner's total tax for petitioner's taxable year 1998 is $46,762 and that the increase in the deficiency that respondent had determined in the notice for 1998 is $16,534. In the answer, respondent further alleged that petitioner's total tax for petitioner's taxable year 1999 is $33,856 and that the increase in the deficiency that respondent had determined in the notice for 1999 is $13,096. In the answer, respondent further alleged certain increases in the additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent had determined in the respective notices.[11]

At an undisclosed time after petitioner commenced the instant case, Ms. Johnson signed petitioner's name on, and submitted to respondent on petitioner's behalf, returns for petitioner's respective taxable years 1998 (purported 1998 return) and 1999 (purported 1999 return). In the purported 1998 return, petitioner showed on page 1, inter alia, "**Taxable** interest" of $266, "Business income" from Schedule C, Profit or Loss From Business (Schedule C), of $16,051, and "Total pensions and

---

[11]In the answer, respondent alleged that the amounts of the increases in the additions to tax under secs. 6651(a)(1) and (2) and 6654(a) for petitioner's respective taxable years 1998 and 1999 that respondent had determined in the notices are to be determined based upon the "increases in the underlying deficiencies" for those respective years.

annuities" of $13,965.  In the purported 1999 return, petitioner showed on page 1, inter alia, "Business income" from Schedule C of $10,251.

Petitioner included Schedule C as part of the purported 1998 return (purported 1998 Schedule C) and the purported 1999 return (purported 1999 Schedule C).  In those purported Schedules C, petitioner showed the "Principal business or profession" as "Lawyer" and "Attorney", respectively.

In the purported 1998 Schedule C, petitioner showed "**Gross income**" of $73,840.[12]  In that purported schedule, petitioner claimed "**Total expenses** before expenses for business use of home" of $55,135 consisting of $1,856 for "Advertising", $6,150 for "Car and truck expenses" (vehicle expenses), $3,601 for "Depreciation", $2,394 for "Insurance (other than health)" (insurance premiums), $11,538 for "Mortgage" interest, $1,835 for "Other" interest, $8,300 for "Office expense", $3,374 for "Repairs and maintenance", $3,125 for "Supplies", $10,716 for "Taxes and licenses", $586 for "Meals and entertainment", $1,100 for "Utilities" (utility expenses), and $560 for "Other expenses".  In the purported 1998 Schedule C, petitioner also claimed "Expenses for business use of your home" of $2,654.  In that purported sched-

---

[12]The amount of "**Gross income**" shown in the purported 1998 Schedule C is $1 more than the total nonemployee compensation that respondent showed in the substitute for return for 1998 and that respondent determined in the notice for 1998.

ule, petitioner showed "**Net profit**" of $16,051, which, as stated above, petitioner reported in petitioner's purported 1998 return on page 1 as "Business income" from Schedule C.

In the purported 1999 Schedule C, petitioner showed "**Gross income**" of $19,033[13] and total expenses of $8,782 for "Depreciation".  In that purported schedule, petitioner showed "**Net profit**" of $10,251, which, as stated above, petitioner reported in petitioner's purported 1999 return on page 1 as "Business income" from Schedule C.

OPINION

Petitioner bears the burden of proving error in the determinations in the notices for petitioner's respective taxable years 1998 and 1999 that remain at issue, see Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933), unless that burden shifts to respondent under section 7491(a).  The parties disagree over whether the burden of proof with respect to the deficiency determinations in the respective notices shifts to respondent under that section.[14]  On the record before us, we find that

_____

[13]Respondent showed in the substitute for return for 1999 and determined in the notice for 1999 that petitioner has total nonemployee compensation of $64,944 for that year.

[14]Respondent submitted to the Court a pretrial memorandum; petitioner did not.  In respondent's pretrial memorandum, respondent argues that the burden of proof with respect to the deficiency determinations in the respective notices does not shift to respondent under sec. 7491(a).  At the end of the trial in this case, Special Trial Judge Powell ordered the parties to file

(continued...)

petitioner has failed to carry his burden of establishing that he complied with the requirements of section 7491(a)(2)(A) and (B). On that record, we hold that the burden of proof with respect to the deficiency determinations in the respective notices does not shift to respondent under section 7491(a). Respondent, however, bears the burden of proof with respect to the allegations in the answer to increase the deficiencies and the additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent had determined in the respective notices. See Rule 142(a).

Before turning to the issues presented, we shall summarize certain principles applicable to the Schedule C deductions that petitioner is claiming and evaluate certain evidence on which petitioner relies.

Certain Applicable Principles

Deductions are strictly a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deduction claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer is required to maintain records sufficient to establish the amount of any deduction claimed. Sec. 6001;

---

[14](...continued)
posttrial memoranda. He specifically ordered the parties to limit the content of their memoranda to proposed findings of fact. Respondent complied with that order; petitioner did not. In violation of Special Trial Judge Powell's order, petitioner advances in petitioner's posttrial memorandum various arguments with respect to the burden of proof in this case and the issues presented.

sec. 1.6001-1(a), Income Tax Regs.

Section 162(a) generally allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. The determination of whether an expenditure satisfies the requirements for deductibility under section 162 is a question of fact. See Commissioner v. Heininger, 320 U.S. 467, 475 (1943). In general, an expense is ordinary if it is considered normal, usual, or customary in the context of the particular business out of which it arose. See Deputy v. du Pont, 308 U.S. 488, 495 (1940). Ordinarily, an expense is necessary if it is appropriate and helpful to the operation of the taxpayer's trade or business. See Commissioner v. Tellier, 383 U.S. 687 (1966); Carbine v. Commissioner, 83 T.C. 356, 363 (1984), affd. 777 F.2d 662 (11th Cir. 1985). Section 262(a) generally disallows a deduction for personal, living, or family expenses.

For certain kinds of expenses otherwise deductible under section 162(a), such as business expenses relating to "listed property", as defined in section 280F(d)(4), a taxpayer must satisfy substantiation requirements set forth in section 274(d) before such expenses will be allowed as deductions. See sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985). As pertinent here, "listed property" is defined in section 280F(d)(4) to include passenger automobiles and other

property used as a means of transportation, unless excepted by section 280F(d)(4)(C) or (5)(B), and cellular telephones.[15] See sec. 280F(d)(4)(A)(i), (ii), (v).

Section 167(a) allows a deduction for a reasonable allowance for the exhaustion, wear and tear, and obsolescence of property used in a trade or business or held for the production of income. In general, the basis on which a depreciation deduction is allowable with respect to any property under section 167(a) is the adjusted basis of the property, determined under section 1011 for the purpose of determining gain on the sale or other disposition of such property. See sec. 167(c)(1).

Section 280A(a) generally disallows a deduction, otherwise allowable under the Code, with respect to the use of a dwelling unit. That general rule, however, does not apply with respect to

> any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--
>
>> (A) as the principal place of business for any trade or business of the taxpayer, [or]
>>
>> (B) as a place of business which is used by patients, clients, or customers in meeting or

---

[15]The elements that a taxpayer must prove with respect to any listed property are: (1)(a) The amount of each separate expenditure with respect to such property and (b) the amount of each business use based on the appropriate measure, e.g., mileage for automobiles, of such property; (2) the time, i.e., the date of the expenditure or use with respect to any such property; and (3) the business purpose for an expenditure or use with respect to such property. Sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

> dealing with the taxpayer in the normal course of his trade or business * * *

Sec. 280A(c)(1)(A) and (B).

Evaluation of Certain Evidence on Which Petitioner Relies

In order to satisfy his burden of proof, petitioner relies on, inter alia, Ms. Johnson's testimony,[16] certain stipulated documents, and certain other documents that petitioner introduced into the record at trial.[17] (We shall refer collectively to those stipulated documents and those documents that petitioner introduced into the record at trial as petitioner's documents.)

With respect to Ms. Johnson's testimony, Ms. Johnson started working for petitioner's law practice on an undisclosed date in August 1999. She had no personal knowledge regarding petitioner's law practice or any other activities of petitioner during 1998 to the date in August 1999 on which petitioner first employed her. As a result, at the trial in this case, Special Trial Judge Powell ordered Ms. Johnson to restrict her testimony to matters with respect to which she had personal knowledge. See Fed. R. Evid. 602. During her testimony, Ms. Johnson failed in certain material respects to comply with Special Trial Judge Powell's order. Under the circumstances, we shall not rely on

_____

[16]Petitioner was not at the trial in this case.

[17]As discussed below, in order to satisfy his burden of proof, petitioner also relies on certain other documents (petitioner's proffered documents).

Ms. Johnson's testimony to the extent that it pertained to matters with respect to which she did not have personal knowledge.  See id.

In addition, we found Ms. Johnson's testimony to be in certain material respects general, vague, conclusory, internally inconsistent, and/or contradicted by the record.  Under the circumstances, we are not required to, and we shall not, rely on that testimony to establish petitioner's position with respect to any of the issues presented in this case.  See Lerch v. Commissioner, 877 F.2d 624, 631-632 (7th Cir. 1989), affg. T.C. Memo. 1987-295; Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. per curiam T.C. Memo. 1969-159; Shea v. Commissioner, 112 T.C. 183, 189 (1999).

With respect to petitioner's documents, those documents include the purported 1998 return and the purported 1999 return. Petitioner apparently is relying on those purported returns to support his position with respect to the Schedule C deductions that he is claiming here.[18]  The respective expenses and the

--------

[18]Although not altogether clear, it appears that petitioner is claiming for his respective taxable years 1998 and 1999 all of the expense and depreciation deductions that are shown in the purported 1998 Schedule C and the purported 1999 Schedule C, except the respective expense deductions claimed in the 1998 purported Schedule C for "Other expenses", "Meals and entertainment", and "Expenses for business use of your home".  If our understanding were incorrect and if petitioner were also claiming that he is entitled for his taxable year 1998 to deduct "Other expenses", "Meals and entertainment", and "Expenses for business
(continued...)

respective amounts of depreciation that are shown in the pur-
ported 1998 Schedule C and the purported 1999 Schedule C are
nothing more than statements of petitioner's position and do not
establish that petitioner is entitled to deduct those claimed
expenses and depreciation.

Petitioner's documents also include virtually all of peti-
tioner's bank statements for 1998 and 1999, respectively, for
(1) petitioner's Chevy Chase checking account (Chevy Chase bank
statements) and (2) petitioner's IRFCU checking and savings
accounts (IRFCU bank statements).  Those bank statements show
withdrawals from, checks drawn on, and deposits into those
respective accounts during the years at issue.  The Chevy Chase
bank statements and the IRFCU bank statements do not show the
purpose of any of those withdrawals, the payee or the purpose of
any of those checks,[19] or the source of any of those deposits,
except certain deposits into the checking account (petitioner's

_____

[18](...continued)
use of your home", on the record before us, we find that peti-
tioner has failed to carry his burden of establishing that he is
entitled to those deductions.

[19]Although the Chevy Chase bank statements and the IRFCU
bank statements do not show the payee of the checks drawn on
petitioner's Chevy Chase checking account and petitioner's IRFCU
checking account, petitioner included as part of petitioner's
proffered documents copies of more than one-third of the checks
drawn on petitioner's Chevy Chase checking account and one check
drawn on petitioner's IRFCU checking account.  Those checks show
the payees thereof.

IRFCU checking account) that petitioner maintained at IRFCU.[20]
We shall not rely on those statements to establish the purpose of
any of the withdrawals from, the payee[21] or the purpose of any of
the checks drawn on, or the source of certain of the deposits[22]
into petitioner's bank accounts.

Unreported Income

In the notice for 1998, respondent determined that peti-
tioner has the following unreported income:  (1) Nonemployee
compensation of $73,839 consisting of $44,424 from GSA and
$29,415 from the District of Columbia,[23] (2) interest of $265,
and (3) a taxable distribution of $13,964 from the National
Finance Center Thrift Savings Plan.  In the notice for 1999,
respondent determined that petitioner has the following unre-
ported income:  (1) Nonemployee compensation of $64,944 from
GSA[24] and (2) interest of $39.  Petitioner concedes the income
determinations in the notices.

---

[20]We found above that the IRFCU bank statements show that
GSA was the source of certain of the deposits made into peti-
tioner's IRFCU checking account during each of the years 1998 and
1999.

[21]See supra note 19.

[22]See supra note 20.

[23]See supra note 7.

[24]See supra note 8.

In the answer, respondent alleged (1) that the 1998 bank deposits analysis showed that during 1998 petitioner made total deposits of at least $166,658 into petitioner's bank accounts, of which $136,362 is taxable (and therefore $30,296 is not taxable), and (2) that the 1999 bank deposits analysis showed that during 1999 petitioner made total deposits of at least $106,751 into those accounts, of which $101,179 is taxable (and therefore $5,572 is not taxable).[25] Respondent did not allege in the answer that respondent reduced the total deposits that respondent

---

[25]In the stipulation of facts, the parties stipulated:

Of the $42,145 petitioner deposited into the Chevy Chase checking account in 1998, $3,587 was from non-taxable sources.

\* \* \* \* \* \* \*

\* \* \* Of the $35,195 petitioner deposited into the Chevy Chase checking account in 1999, $5,572 was from non-taxable sources.

\* \* \* \* \* \* \*

\* \* \* Of the $124,513 petitioner deposited into the IRFCU accounts in 1998, $26,709 was from non-taxable sources.

We construe the foregoing stipulations to mean that at least $30,296 of the total deposits that petitioner made during 1998 into petitioner's bank accounts and at least $5,572 of the total deposits that petitioner made during 1999 into those accounts are not taxable. To construe those stipulations otherwise would mean that petitioner conceded in the parties' stipulation of facts that for each of his taxable years 1998 and 1999 he has the total amount of unreported income that respondent alleged in the answer for each of those years. On the record before us, we find that petitioner did not intend to make that concession. Cf. Rule 91(e).

alleged for petitioner's respective taxable years 1998 and 1999 by the amounts of total unreported income that respondent had determined in the respective notices and that respondent should have reasonably known had been deposited into petitioner's bank accounts during those respective years. Nor did respondent allege in the answer that respondent reduced the amounts of total unreported income that respondent alleged in the answer for petitioner's respective taxable years 1998 and 1999 by any portion of the amounts of unreported income that respondent had determined in the respective notices.

Where a taxpayer has failed to maintain sufficient records under section 6001, as is the case here, the Commissioner of Internal Revenue (Commissioner) may rely on the bank deposits method in order to determine the taxpayer's income. Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978). Respondent has the burden of proof with respect to the allegations of unreported income that respondent advanced in the answer on the basis of the bank deposits method, see Rule 142(a), and the obligation to check all reasonable leads in order to verify the essential accuracy of the income approximation produced by that method.[26]

On the record before us, we find that respondent has failed to carry respondent's burden of showing that respondent checked all reasonable leads in order to verify the essential accuracy of

---

[26]See Cruz v. Commissioner, T.C. Memo. 1990-594.

the amount of total unreported income for each of petitioner's taxable years 1998 and 1999 that respondent alleged in the answer. In fact, respondent appears to have ignored actual facts of which respondent was aware that affect the essential accuracy of each of those amounts of alleged total unreported income.

With respect to the total deposits that respondent alleged in the answer for petitioner's taxable year 1998, respondent knew that at least certain ($10,464) of the nonemployee compensation that petitioner received from GSA during that year, which respondent included as part of the total unreported income determined in the notice for 1998,[27] had been deposited by direct deposit into petitioner's IRFCU checking account.[28] Respondent has not proffered any evidence as to whether the $30,296 that respondent excluded from petitioner's total deposits under the 1998 bank deposits analysis included any of the $10,464 that GSA had deposited into petitioner's IRFCU checking account during 1998. Nor has respondent proffered any evidence as to whether respondent checked all reasonable leads in order to verify whether any of the remaining unreported income that respondent determined in

---

[27]In the notice for 1998, respondent determined that petitioner has additional nonemployee compensation of $33,960 from GSA. See supra note 7.

[28]The IRFCU bank statements show that GSA started making direct deposits into petitioner's IRFCU checking account in November 1998 and that during November through December 1998 GSA made direct deposits totaling $10,464 into that account.

the notice for 1998 (i.e., the balance of the nonemployee compensation from GSA ($33,960), the nonemployee compensation from the District of Columbia ($29,415), and the distribution from the National Finance Center Thrift Savings Plan ($13,964)), had been deposited into petitioner's bank accounts during that year.

With respect to the total deposits that respondent alleged in the answer for petitioner's taxable year 1999, respondent knew that all ($64,944) of the nonemployee compensation that petitioner received from GSA during that year, which respondent included as part of the total unreported income determined in the notice for 1999, had been deposited by direct deposit into petitioner's IRFCU checking account. Respondent has not proffered any evidence as to whether the $5,572 that respondent excluded from petitioner's total deposits under the 1999 bank deposits analysis included any of the $64,944 that GSA had deposited into petitioner's IRFCU checking account during 1999. Moreover, even if respondent had excluded $5,572 of the total amount that GSA had deposited, respondent did not exclude from petitioner's total deposits during 1999 the balance ($59,372) that GSA had deposited into petitioner's IRFCU checking account during that year. Nor did respondent reduce the amount of total unreported income that respondent alleged in the answer for petitioner's taxable year 1999 by any portion of the amount of unreported income that respondent determined in the notice for

1999.

On the record before us, we find that respondent has failed to carry respondent's burden of establishing that petitioner has unreported income for his respective taxable years 1998 and 1999 in excess of the amounts determined in the notices. On that record, we further find that respondent has failed to carry respondent's burden of establishing that petitioner has the increases in the deficiencies for his respective taxable years 1998 and 1999 that respondent alleged in the answer.

Claimed Deductions

It is petitioner's position that he is entitled to deduct for his taxable year 1998 the following: (1) Advertising expenses of $1,856, (2) vehicle expenses of $6,150, (3) insurance premiums of $2,394, (4) mortgage interest of $11,538, (5) other interest of $1,835, (6) office expenses of $8,300, (7) repair and maintenance expenses of $3,374, (8) expenses for supplies of $3,125, (9) taxes and licenses of $10,716, (10) utility expenses of $1,100, and (11) depreciation of $3,601 with respect to (a) the U Street property and (b) certain unidentified vehicles. It is petitioner's position that he is entitled to deduct for his taxable year 1999 depreciation of $8,782 with respect to (1) the U Street property and (2) an unidentified vehicle.[29]

---

[29]In his posttrial memorandum, petitioner states: "The Petitioner includes all his 1999 business expenses under Depreci-
(continued...)

In support of his position that he is entitled to the Schedule C deductions that he is claiming, petitioner relies on Ms. Johnson's testimony and petitioner's documents. We set forth above our evaluation of that evidence. Petitioner also relies on petitioner's proffered documents, virtually all of which pertain to petitioner's taxable year 1998 (petitioner's 1998 proffered documents).[30] At the trial in this case, respondent objected to the admission of petitioner's proffered documents on the ground that no proper foundation had been laid for the admission of those documents as business records. It is not clear from the record whether Special Trial Judge Powell ruled on that objec-tion. The following discussion assumes arguendo that Special Trial Judge Powell admitted petitioner's proffered documents into evidence and made them part of the record.

---

[29](...continued)
ation and section 179 expense deduction." Although not alto-gether clear, we construe petitioner's statement to mean that the only Schedule C deduction that he is claiming for 1999 is a depreciation deduction. Our understanding of petitioner's statement in petitioner's posttrial memorandum is consistent with the purported 1999 return. The only deduction that petitioner claimed in the purported 1999 Schedule C is a depreciation deduction of $8,782.

[30]Only two of petitioner's proffered documents pertain to petitioner's taxable year 1999, i.e., a check drawn on peti-tioner's IRFCU checking account, dated Nov. 12, 1999, and payable to "Ana & Jose Reyes" and a check drawn on petitioner's Chevy Chase checking account, dated June 12, 1999, and payable to "U Street Cleaners". The record does not disclose the issue(s) presented in this case, if any, to which those checks pertain.

We first evaluate petitioner's 1998 proffered documents. Those proffered documents consist of (1) certain checks (petitioner's checks) that petitioner issued to various individuals and establishments, including certain checks that petitioner issued to a pediatrician; (2) certain credit card statements consisting of (a) two statements for a Chase card that show closing dates of June 18 and July 20, 1998, respectively, and (b) two statements for a Visa Gold card that show closing dates of June 19, 1998, and September 11, 1998, respectively; (3) a purported mileage log of petitioner (petitioner's 1998 purported mileage log); (4) duplicates of certain of the IRFCU bank statements and the Chevy Chase bank statements that are included in petitioner's documents that the parties stipulated; (5) certain invoices and billing statements from various establishments (petitioner's invoices and billing statements), including certain statements from a pediatrician; (6) certain receipts consisting of (a) two receipts from Sears dated September 12 and October 21, 1998, respectively, (b) a receipt from Hechinger dated October 17, 1998, and (c) a receipt from the University of the District of Columbia dated May 29, 1998; (7) certain documents relating to certain student loans; (8) certain deposit slips; and (9) a notice dated September 25, 1998, with respect to an unsatisfied parking ticket.

We find that petitioner's 1998 proffered documents are inadequate to establish petitioner's entitlement to any of the Schedule C deductions that he is claiming for his taxable year 1998. By way of illustration of the inadequacies of petitioner's 1998 proffered documents, we do not know the claimed expense(s) to which approximately three-quarters of petitioner's checks pertain.[31] As for the remainder of petitioner's checks, although we have been able to determine the claimed expense(s) to which those checks pertain, we find that those checks do not establish, inter alia, that petitioner paid those expenses in conducting his law practice.

By way of further illustration of the inadequacies of petitioner's 1998 proffered documents, petitioner's credit card statements do not establish the claimed expense(s) to which those statements pertain or whether petitioner is claiming all of the expenses shown in those statements. Moreover, we find that petitioner's credit card statements do not establish, inter alia, that petitioner paid the expenses shown in petitioner's credit card statements in conducting his law practice.

---

[31]Included in petitioner's checks are a substantial number of checks with handwritten notations, most of which are illegible or unclear as to their meaning. We note that even if the handwritten notations on petitioner's checks were legible and clear as to their meaning, those notations do not establish that the expenditures paid by those checks were paid in conducting petitioner's law practice.

As a further illustration of the inadequacies of petitioner's 1998 proffered documents, petitioner's 1998 purported mileage log[32] consists of four columns with the headings "Date", "From", "To", and "Miles".  The entries shown in the columns headed "From" and "To" for the period January 5 through May 10, 1998, consist of various addresses with no further explanation.  Virtually all of the entries shown in the columns headed "From" and "To" for the period May 11 through December 29, 1998, consist of terms such as "Home", "Court", "Jail", "Witness", "Client's Home", and "Crime Scene".[33]  Because petitioner was not at the trial in this case, he was not available to explain the entries in petitioner's 1998 purported mileage log.  Nor is there reliable evidence in the record to explain (1) any of the entries in petitioner's 1998 purported mileage log and (2) how petitioner used that purported log to calculate the deduction that he claims for vehicle expenses.  We find that petitioner's 1998 purported mileage log does not establish, inter alia, that petitioner made the purported trips reflected in that purported log in conducting

---

[32]Ms. Johnson, who did not start working for petitioner until sometime in August 1999, testified that petitioner prepared petitioner's 1998 purported mileage log.  Ms. Johnson did not testify (1) how she knew that petitioner prepared that purported log, which purports to cover trips during 1998 only, or (2) when he prepared it.

[33]Certain of the entries in the respective columns headed "From" and "To" for the period May 11 through July 19, 1998, are addresses.

his law practice.

By way of further illustration of the inadequacies of petitioner's 1998 proffered documents, we find that petitioner's invoices and billing statements do not establish, inter alia, that petitioner paid the amounts shown therein and/or that petitioner paid the amounts shown in those invoices and billing statements in conducting his law practice.

As a final illustration of the inadequacies of petitioner's 1998 proffered documents, neither the receipt from the University of the District of Columbia nor the receipts from Sears indicate the reason petitioner expended the amounts shown in those respective receipts. Although the receipt from Hechinger shows the items[34] that were purchased for the total amount shown in that receipt, we find that it does not establish, inter alia, that petitioner purchased those items in conducting his law practice.

We now address petitioner's argument that he is entitled to the Schedule C deductions that he is claiming for his respective taxable years 1998 and 1999. With respect to the claimed Schedule C deductions for 1998 for advertising expenses, vehicle expenses, insurance premiums,[35] mortgage interest, other inter-

_____

[34]The items shown in the receipt from Hechinger are "DRUM LINER TRASH BAG", "GROUND FAULT KIT", "STAPLE DISPENSER", "ROMEX CONNECTOR", and "NMB CABLE".

[35]The record does not establish the type of insurance policy to which petitioner's claimed insurance premiums pertain.

est,[36] office expenses, repair and maintenance expenses, expenses
for supplies, taxes and licenses, and utility expenses, we find
nothing in the record that satisfies petitioner's burden of
showing (1) that during 1998 petitioner paid or incurred those
expenses, (2) that he paid or incurred those expenses in conduct-
ing his law practice, and/or (3) that those expenses constitute
ordinary and necessary business expenses in conducting his law
practice under section 162(a).  On the record before us, we find
that petitioner has failed to carry his burden of establishing
that he is entitled for his taxable year 1998 to the respective
deductions under section 162(a) that he claims for advertising
expenses, vehicle expenses, insurance premiums, mortgage inter-
est, other interest, office expenses, repair and maintenance
expenses, expenses for supplies, taxes and licenses, and utility
expenses.

With respect to the depreciation deductions that petitioner
claims with respect to the U Street property for his respective
taxable years 1998 and 1999, the only evidence that petitioner
introduced to support those claimed deductions is Ms. Johnson's
general and vague testimony that "the depreciation on the home is
based on a calculation of a formula based on * * * the amount you
purchase the home over a period of time" and that a "good guess"

[36]The record does not establish the nature of petitioner's
claimed interest.

of the purchase price for that property is $260,000. On the record before us, we find that petitioner has failed to carry his burden of establishing that he is entitled for his respective taxable years 1998 and 1999 to the depreciation deductions under section 167(a) that he claims with respect to the U Street property.

With respect to the respective depreciation deductions that petitioner claims for his taxable year 1998 with respect to certain unidentified vehicles and the depreciation deduction that he claims for his taxable year 1999 with respect to an unidentified vehicle, on the record before us, we find that petitioner has failed to carry his burden of establishing, inter alia, that he used any vehicle as part of his law practice. See sec. 167(a). On that record, we further find that petitioner has failed to carry his burden of establishing that he is entitled (1) for his taxable year 1998 to the depreciation deduction under section 167(a) that he claims with respect to certain unidentified vehicles and (2) for his taxable year 1999 to the depreciation deduction under that section that he claims with respect to an unidentified vehicle.

Assuming arguendo that we had found that petitioner carried his burden of establishing (1) for his taxable year 1998 the deductibility under section 162(a) of petitioner's claimed expenses pertaining to the U Street property (i.e., petitioner's

claimed mortgage interest, petitioner's claimed utility expenses, and petitioner's claimed repair and maintenance expenses) and (2) for his respective taxable years 1998 and 1999 the deductibility under section 167(a) of petitioner's claimed depreciation with respect to that property, he would still have to satisfy the requirements of section 280A(c) with respect to those expense and depreciation deductions. In order to satisfy the requirements of that section, petitioner would have to establish that those expense and depreciation deductions are allocable to a portion of the U Street property that was exclusively used on a regular basis as the principal place of business for his law practice or as a place of business to meet or deal with clients in the normal course of his law practice. See sec. 280A(c).

The parties do not dispute that petitioner resided at the U Street property and that that property consisted of three floors. Petitioner contends that during each of the years at issue he exclusively used on a regular basis the lower two floors of the U Street property as his principal place of business for his law practice or as a place of business to meet or deal with clients in the normal course of his practice. To support petitioner's contention, petitioner relies on Ms. Johnson's testimony. As discussed above, we are unwilling to rely on Ms. Johnson's testimony to the extent that it pertained to matters surrounding petitioner's law practice or any other activities of petitioner

during 1998 to the date in August 1999 on which petitioner first employed her.

Assuming arguendo that we were willing to rely on Ms. Johnson's testimony with respect to whether during each of the years at issue petitioner exclusively used on a regular basis the U Street property as his principal place of business for his law practice or as a place of business to meet or deal with clients in the normal course of his practice, we found her testimony to be internally inconsistent. Ms. Johnson testified on direct examination that the top two floors of the U Street property were "completely business". On cross-examination, Ms. Johnson contra-dicted that testimony and testified that the top floor of the U Street property was "just his residence" and that the lower two floors of that property were used for business purposes.

On the record before us, we find that petitioner has failed to carry his burden of establishing that during each of the years at issue he exclusively used on a regular basis any portion of the U Street property as the principal place of business for his law practice or as a place of business to meet or deal with clients in the normal course of his law practice. See sec. 280A(c).

Assuming arguendo that we had found that petitioner carried his burden of establishing for his taxable year 1998 the deduct-ibility under section 162(a) of petitioner's claimed vehicle

expenses, petitioner would still have to satisfy the requirements of section 274(d) with respect to those expenses. On the record before us, we find that he has not done so. See sec. 274(d)(4); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Assuming arguendo that we had found that petitioner carried his burden of establishing for his taxable year 1998 the deductibility under section 162(a) of petitioner's claimed office expenses, it appears from Ms. Johnson's testimony that those claimed expenses include certain expenses that pertained to the use of a cellular telephone.[37] To the extent that petitioner is claiming expenses that pertained to the use of a cellular telephone, petitioner would still have to satisfy the requirements of section 274(d). On the record before us, we find that he has not done so. See sec. 274(d)(4); sec. 1.274-5T(b)(6), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Additions to Tax

It is respondent's position that petitioner is liable for the respective additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent determined in the notices and the

---

[37]Because Ms. Johnson testified that she "itemized the expenses" shown in the purported 1998 return, we believe that she had personal knowledge of the nature of the expenses that petitioner is claiming for his taxable year 1998. As discussed above, that is not to say that Ms. Johnson had personal knowledge of the expenses that petitioner paid during that year in conducting his law practice.

increases in those respective additions to tax that respondent alleged in the answer.

Section 6651(a)(1) imposes an addition to tax for failure to file timely a return. Section 6651(a)(2) imposes an addition to tax for failure to pay timely the amount shown as tax in a return. The respective additions to tax under section 6651(a)(1) and (2) do not apply if the respective failures to file timely and to pay timely are due to reasonable cause, and not willful neglect. Sec. 6651(a)(1) and (2). Section 6654(a) imposes an addition to tax in the case of an underpayment of estimated tax by an individual.[38] The addition to tax under that section is mandatory unless petitioner qualifies under one of the exceptions in section 6654(e).[39]

---

[38]For purposes of sec. 6654(a), it is necessary to determine whether there is an underpayment of a required installment of estimated tax. See sec. 6654(a) and (b). In this connection, the amount of any required installment is 25 percent of the required annual payment. Sec. 6654(d)(1)(A). The required annual payment is equal to the lesser of (1) 90 percent of the tax shown in the return for the taxable year or, if no return was filed, 90 percent of the tax for such year, or (2) if the individual filed a return for the preceding taxable year, 100 percent of the tax shown in such return. Sec. 6654(d)(1)(B).

[39]Sec. 6654(e) provides that no addition to tax shall be imposed under sec. 6654(a) for any taxable year if (1) the tax shown in the return for such taxable year (or, if no return is filed, the tax), reduced by the credit allowable under sec. 31, is less than $1,000, sec. 6654(e)(1); (2) the preceding taxable year was a taxable year of 12 months, the individual did not have any liability for such preceding taxable year, and the individual was a citizen or resident of the United States throughout such preceding taxable year, sec. 6654(e)(2); (3) the Secretary
(continued...)

Respondent must carry the burden of production with respect to the respective additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent determined in the notices and the increases in those respective additions to tax that respondent alleged in the answer. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). To satisfy respondent's burden of production, respondent must come forward with "sufficient evidence indicating that it is appropriate to impose" the additions to tax. Higbee v. Commissioner, supra at 446. Although respondent bears the burden of production with respect to the respective additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent determined in the notices, respondent "need not introduce evidence regarding reasonable cause * * * or similar provisions. * * * the taxpayer bears the burden of proof with regard to those issues." Higbee v. Commissioner, supra. Respondent bears the burden of proof with respect to the increases in the respective additions to tax under sections 6651(a)(1) and (2) and 6654(a) for petitioner's taxable years

---

[39](...continued)
determines that by reason of casualty, disaster, or other unusual circumstances the imposition of such addition to tax would be against equity and good conscience, sec. 6654(e)(3)(A); or (4) the Secretary determines that during the taxable year for which the estimated payments are required or in the taxable year preceding such taxable year, the taxpayer retired after having attained the age of 62 or became disabled and the underpayment of any estimated tax was due to reasonable cause and not willful neglect, sec. 6654(e)(3)(B).

1998 and 1999 that respondent alleged in the answer.  See Rule 142(a).

With respect to the respective additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent determined in the notices, we turn first to the addition to tax under section 6651(a)(1).  We have found that petitioner did not file a return for each of his taxable years 1998 and 1999.  On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c) with respect to the additions to tax under section 6651(a)(1) that respondent determined in the respective notices.

Petitioner relies on Ms. Johnson's testimony to support his position that his failure to file timely was due to reasonable cause, and not willful neglect.  Section 1.6081-4, Income Tax Regs., provides that "An individual who is required to file an individual income tax return will be allowed an automatic 4-month extension of time to file the return after the date prescribed for filing the return".  After taking the automatic four-month extension into account, the due date for petitioner's return for 1998 would have been August 15, 1999, and the due date for petitioner's return for 1999 would have been August 15, 2000.  Ms. Johnson began working for petitioner sometime in August 1999 and continued to work for him until at least through 2004.  We believe that Ms. Johnson had personal knowledge about why peti-

tioner failed to file a return for each of his taxable years 1998 and 1999.

Ms. Johnson testified that petitioner did not file a return for each of his taxable years 1998 and 1999 because he (1) did not have all of the information that he needed to file a return for each of those years and (2) was too busy in his law practice. The unavailability of information or records does not necessarily establish reasonable cause for failure to file timely a return. See Elec. & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1343 (1971), affd. without published opinion 496 F.2d 876 (5th Cir. 1974). A taxpayer is required to file timely based upon the best information available and to file thereafter an amended return if necessary. Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982). Moreover, a taxpayer's preoccupation with employment or other activities does not necessarily establish reasonable cause for failure to timely file a return. Dustin v. Commissioner, 53 T.C. 491, 507 (1969), affd. 467 F.2d 47 (9th Cir. 1972).

On the record before us, we find that petitioner has failed to carry his burden of showing that his failure to file a return for each of his taxable years 1998 and 1999 was due to reasonable cause, and not willful neglect. On that record, we further find that petitioner has failed to carry his burden of establishing that he is not liable for the additions to tax under section 6651(a)(1) that respondent determined in the respective notices.

We turn now to the additions to tax under section 6651(a)(2) that respondent determined in the respective notices. That section applies only in the case of an amount of tax shown in a return. Cabirac v. Commissioner, 120 T.C. 163, 170 (2003). For purposes of section 6651(a)(2), a return prepared by the Commissioner under section 6020(b) is treated as the return filed by the taxpayer. Sec. 6651(g)(2); Cabirac v. Commissioner, supra. Because petitioner did not file a return for each of his taxable years 1998 and 1999, respondent prepared a substitute for return under section 6020(b) for each of those years. The substitute for return for 1998 showed total tax of $30,228.40. The substitute for return for 1999 showed total tax of $20,760. The record establishes that petitioner failed to pay timely the tax shown in each of those substitutes for return. On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c) with respect to the additions to tax under section 6651(a)(2) that respondent determined in the respective notices.

It appears that petitioner is claiming that he failed to pay timely the tax shown in the substitute for return for 1998 and the tax shown in the substitute for return for 1999 for the same reasons that petitioner failed to file timely a return for each of those years, that is to say, he (1) did not have all of the requisite information and (2) was too busy in his law practice.

On the record before us, we find that petitioner has failed to carry his burden of showing that his failure to pay timely the tax shown in the substitute for return for 1998 and the tax shown in the substitute for return for 1999 was due to reasonable cause, and not willful neglect.[40]  On that record, we further find that petitioner has failed to carry his burden of establishing that he is not liable for the additions to tax under section 6651(a)(2) that respondent determined in the respective notices.

We turn finally to the additions to tax under section 6654(a) that respondent determined in the respective notices.  We have found (1) that petitioner filed a return for his taxable year 1997 that showed tax due of $20,084 and that the IRS accepted as filed, (2) that petitioner did not file a return for each of his taxable years 1998 and 1999, and (3) that petitioner did not make any estimated tax payments for either of his taxable years 1998 or 1999.  On the record before us, we find that respondent has carried respondent's burden of production under section 7491(c) with respect to the additions to tax under section 6654(a) that respondent determined in the respective notices.

With respect to the additions to tax under section 6654(a) that respondent determined in the respective notices, petitioner

---

[40]Cf. <u>Klein v. Commissioner</u>, T.C. Memo. 2007-325; <u>Joubert v. Commissioner</u>, T.C. Memo. 2007-292.

does not argue, and the record does not establish, that he qualifies under any of the exceptions listed in section 6654(e). On the record before us, we find that petitioner is liable for the additions to tax under section 6654(a) that respondent determined in the respective notices.

With respect to the increases in the additions to tax under sections 6651(a)(1) and (2) and 6654(a) for petitioner's respective taxable years 1998 and 1999 that respondent alleged in the answer, we have found that respondent has failed to carry respondent's burden of establishing that petitioner has the increases in the deficiencies for his respective taxable years 1998 and 1999 that respondent alleged in the answer. On the record before us, we find that respondent has failed to carry respondent's burden of establishing that petitioner is liable for his respective taxable years 1998 and 1999 for the increases in the additions to tax under sections 6651(a)(1) and (2) and 6654(a) that respondent alleged in the answer.

We have considered all of the contentions and arguments of petitioner that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

<u>Decision will be entered for respondent with respect to the deficiencies and additions to tax determined in the notices and for petitioner with respect to the increases in those deficiencies and those additions to tax alleged in the answer</u>.